[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10064
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 9, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00586-JSM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BEAU DIAMOND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 9, 2012)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Beau Diamond appeals his convictions for wire fraud, mail fraud, money

laundering, and the transport of stolen property, in violation of 18 U.S.C. §§ 2, 1341, 1343, 1957, and 2314, stemming from the operation of a $30 million Ponzi scheme.

Diamond raises six issues on appeal. First, he argues that the district court committed reversible error when it gave the jury ex parte instructions. Second, he argues that the district court deprived him of his right to testify and to the effective assistance of his counsel by denying his motions to continue his trial. Third, he argues that the district court deprived him of a fair trial by improperly instructing the jury. Fourth, he argues that the magistrate judge erred when he did not grant his discovery requests seeking mandatorily discoverable material. Fifth, he argues that the district court deprived him of a fair trial by unfairly restricting his examination of two witnesses, while allowing the government a free hand. Finally, he argues that, due to the cumulative effect of the district court's many errors, his convictions should be reversed and his case remanded for retrial. We affirm in part, vacate and remand in part, and dismiss in part.

I.

At around 11:16 a.m. on July 19, 2010, the jury retired to deliberate. Sometime on the afternoon of July 20, the jury submitted a note to the district judge that said, "We do not understand Count 13 as it appears in document 27,

2

page 11. Please clarify." Document 27 is the indictment, and Count 13 is the charge that Diamond laundered $204,000 by purchasing a Lamborghini sports car.[1] The judge did not immediately advise the parties of this jury note but instead wrote back to the jury, "Please refer to exhibit 151-M."[2] Exhibit 151-M is a one-page government exhibit entitled "Chart 29. Count Thirteen (Illegal Monetary Transaction)." The exhibit has arrows showing that on "2/6/2008" Diamond "causes transfer from Diamond Ventures LLC BOA[3] acct 7477 to Beau Diamond BOA acct 4835" in the amount of "$200,000 [sic]."[4] The exhibit also features a picture of Diamond sitting in the Lamborghini with a subtitle "2/6/08 Diamond wires $204,000 to One Step Autos for aquisition [sic] of 2006 Lamborghini

---

[1] The indictment on Count 13 stated that "on or about" February 6, 2008, Diamond "caused $204,000 to be transferred from his Bank of America account in the name of Beau Diamond in Sarasota Florida to the account of One Step Autos, Inc. at Cadence Bank, N.A. for the purchase of a 2006 Lamborghini Gallardo." The government alleged that this transaction violated 18 U.S.C. §§ 2 and 1957 because it affected interstate commerce and involved "criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, mail fraud . . . and wire fraud . . . as alleged in Counts One through Eight . . . [.]"

[2] Diamond contends that there is error because the record does not include a copy of the jury's question or the judge's response. However, the question and answer are both included in the "Court's Exhibit List" as exhibit 3.

[3] "BOA" is "Bank of America."

[4] This portion of the exhibit also cites "Exhibit 134-B" and "Exhibit 134-E."

3

Gallardo."[5]

The next morning, the jury indicated that it had reached a verdict. Just before the jury returned, the district judge informed the parties that he had communicated with the jury. The judge provided counsel with the opportunity to object. Diamond's counsel said, "Just for the record, we would have objected. We would have had nothing read back to the jury except for them to read the – review the indictment and – and recollect the evidence to the best of their ability, Your Honor." The jury convicted Diamond on all eighteen counts.

It is error for a judge to engage in ex parte communications with a jury, without first consulting the parties. United States v. Rapp, 871 F.2d 957, 966 (11th Cir. 1989), overruled on other grounds, United States v. Wells, 519 U.S. 482, 486 n.3, 117 S. Ct. 921, 925 n.3 (1997). It has the potential to violate Rule 43(a), the Fifth Amendment, and also the Sixth Amendment.[6] Fed. R. Crim. P. 43(a) ("Unless this rule, Rule 5, or Rule 10 provides otherwise, the defendant must be present at: (1) the initial appearance, the initial arraignment, and the plea; (2) every trial stage, including jury impanelment and the return of the verdict; and (3) sentencing."); United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484

---

[5] For this part, the exhibit also cites "Exhibit 129-A," "Exhibit 129-B," "Exhibit 129-C," "Exhibit 129-D," "Exhibit 129-E," "Exhibit 130-A," and "Exhibit 134-B."

[6] Diamond does not allege any Sixth Amendment violation in this appeal.

4

(1985) (per curiam) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.") (citation omitted).

However, the existence of such an error does not end the inquiry. We must determine whether the error was harmful. See Rushen v. Spain, 464 U.S. 114, 117 n.2, 104 S. Ct. 453, 455 n.2 (1983) (noting that "the right to be present during all critical stages of the proceedings and the right to be represented by counsel . . . as with most constitutional rights, are subject to harmless-error analysis . . . ."); Rapp, 871 F.2d at 966 (collecting cases where harmless error analysis was employed after a trial judge engaged in ex parte communications with the jury).

A non-constitutional error is harmless when it had no effect or very slight effect on the verdict. United States v. Sweat, 555 F.3d 1364, 1367 (11th Cir. 2009). However, constitutional error is harmless only if it appears beyond a reasonable doubt that the error did not contribute to the verdict. United States v. Gari, 572 F.3d 1352, 1362 (11th Cir. 2009). A "very limited class of errors that affect the framework within which the trial proceeds, such that it is often difficult to assess the effect of the error," have been labeled as structural errors requiring

5

automatic reversal.  United States v. Marcus, ___ U.S. ___, ___, 130 S. Ct. 2159, 2164-65 (2010) (citations, alterations, and quotations omitted).  Such structural error exists where there was a "total deprivation of counsel," a "lack of an impartial trial judge," a violation of the "right to self-representation at trial," a "violation of the right to a public trial," or an "erroneous reasonable-doubt instruction."  Id. at 2165.

a. Count 13

Count 13 pertained to Diamond's illegal use of funds to purchase a 2006 Lamborghini Gallardo sports car.  On appeal, the government has conceded that, with respect to Count 13, the ex parte communication was not harmless.  We agree and thus vacate and remand Diamond's conviction on Count 13.

b. Other Counts

Diamond's other seventeen convictions included seven counts of wire fraud, three counts of mail fraud, six counts of illegal transactions, and one count of transportation of stolen property.[7]

---

[7]    The counts are summarized as follows: Diamond (1) on 2/14/07 caused "S.B." to wire $100,000 for investing; (2) on 7/30/07 claimed to "R.S." that he could not lose money; (3) on 3/20/08 claimed to "R.S." that he was not taking any money from clients' principal; (4) on 3/26/08 caused "H.D." to wire $50,000 for investing; (5) on 8/15/08 caused "B.R." to wire $250,000 for investing; (6) on 10/3/08 claimed to "D.C." and other investors that their money was safe; (7) on 11/7/08 caused "C.I." to wire $200,000 for investing; (8) on 1/7/08 caused "R.S." to mail $80,000 for investing; (9) on 5/28/08 caused "R.A." to mail $100,000 for investing; (10) on 8/8/08 caused $48,750 to be mailed to "D.C."; (11) on 3/30/07 caused

On appeal, Diamond seems to argue that the <u>ex parte</u> communication also requires reversal of these seventeen other convictions. We disagree.[8] As noted above, an <u>ex parte</u> communication is not one of the rare scenarios where "structural error" exists. <u>Marcus</u>, ___ U.S. at ___, 130 S. Ct. at 2165; <u>see also</u> <u>Gagnon</u>, 470 U.S. at 526, 105 S. Ct. at 1484 ("We think it clear that respondents' rights under the Fifth Amendment Due Process Clause were not violated by the <u>in camera</u> discussion with the juror. The mere occurrence of an <u>ex parte</u> conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at

_____

$500,000 to be transferred from a business account to his personal account for the purpose of purchasing a condo; (12) on 1/30/08 caused $50,000 to be transferred from a business account to his personal account; (13) on 2/6/08 caused $204,000 to be transferred from his personal account to a car dealer's account for the purpose of purchasing a Lamborghini; (14) on 5/23/08 caused $100,000 to be transferred from a business account to his personal account; (15) on 11/5/08 caused $300,000 to be transferred for the purpose of a trip to Las Vegas; (16) on 12/9/08 caused $75,000 to be transferred from a business account to a personal account; (17) on 1/8/09 caused $66,000 to be withdrawn from a business account; and (18) on 2/11/09 transferred $8,000 from Forex Trading in Michigan to J.P. Morgan Chase account in Florida.

[8] We are not entirely convinced that Diamond properly objected on this ground at the district court. When the district judge revealed that he had communicated with the jury on Count 13, Diamond did not object to this error with respect to the other seventeen convictions. He likewise never moved for a new trial or mistrial indicating that the error required reversal of all convictions. See <u>United States v. Keller</u>, 916 F.2d 628, 636 (11th Cir. 1990) ("[A] careful reading of the record demonstrates that counsel properly objected to the instructions only as they related to Count Three. Therefore we conclude that counsel failed to preserve for appeal the issue whether the trial court amended the indictment in relation to the other conspiracy counts."); <u>Sweat</u>, 555 F.3d at 1367 n.4; <u>see also</u> <u>Gagnon</u>, 470 U.S. at 528, 105 S. Ct. at 1485 ("Respondents did not even make any post-trial motions, although post-trial hearings may often resolve this sort of claim [about improper <u>ex parte</u> communications]."). However, whether or not we proceed under plain error, we reach the same conclusion.

every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.") (quotations and alteration omitted).

Instead, as noted above, we review such communications for harmlessness. See Rushen, 464 U.S. at 117 n.2, 104 S. Ct. at 455 n.2; Sweat, 555 F.3d at 1367-68; Rapp, 871 F.2d at 966.

We conclude that there was no due process violation with respect to the other seventeen convictions. "[A] defendant has a due process right to be present at a proceeding whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Gagnon, 470 U.S. at 526, 105 S. Ct. at 1484 (quotations omitted). Diamond has failed to explain how the district judge's communication on Count 13 prevented him from "defend[ing] against the charge[s]" in the other counts. Id.

Even assuming there was due process error, we believe it was harmless. The jury's question was specific to Count 13, and the judge's response was also specific to that count. It was the only count dealing in any way with Diamond's purchase of the Lamborghini. Exhibit 151-M contained nothing but a summary of

the government's allegations regarding that same purchase. Thus, we reject Diamond's argument that he suffered harmful due process violations with respect to Counts 1-12 and 14-18. See id.; see also United States v. Burns, 683 F.2d 1056, 1059 (7th Cir. 1982) ("[I]t should be evident from our analysis of the implications of the contact between judge and jury that the potential prejudice . . . relates exclusively to the jury's disposition of the conspiracy count. There is no basis for concluding that the jury's disposition of the other counts in the indictment might have been influenced in any manner by a discussion which was confined by its terms to an issue relating exclusively to the conspiracy count.").

For the same reasons, we find no reversible error under Rule 43(a). See Sweat, 555 F.3d at 1368. Accordingly, with respect to Counts 1-12 and 14-18, we find no reversible error resulting from the judge's ex parte communication.

## II.

We review the denial of a continuance motion for abuse of discretion. United States v. Bowe, 221 F.3d 1183, 1189 (11th Cir. 2000). A party that claims an inadequate opportunity to prepare for trial resulting from the denial of a continuance must show specific, substantial prejudice by identifying relevant, non-cumulative evidence that he would have presented. United States v. Valladares, 544 F.3d 1257, 1262 (11th Cir. 2008). To assess a claim of inadequate

9

preparation time, we consider "the amount of time [given], the likelihood of prejudice, the accused's role in shortening the time period, the degree of complexity of the case, and the availability of discovery from the prosecution." United States v. Davis, 967 F.2d 516, 518 (11th Cir. 1992).

We find no abuse of discretion in the district court's refusal to grant Diamond's requests for continuances, including a two-week mid-trial continuance. As the district court noted, this was a relatively straight-forward fraud case. Diamond has not shown any specific, non-cumulative evidence that he was unable to provide at trial because the continuance requests had been denied.

Additionally, the district court had previously granted two pre-trial continuances, which gave Diamond a total of almost seven and a half months to prepare his defense. Once trial commenced, he rigorously cross-examined all of the government's witnesses and presented two of his own. Diamond had adequate preparation time for trial and he has not shown that he suffered substantial prejudice by the denial of his continuance motions.

III.

We review the content of a jury instruction de novo to determine if it misstated the law or prejudiced the objecting party. United States v. Richardson, 233 F.3d 1285, 1292 (11th Cir. 2000). However, we review the refusal to give a

10

requested jury instruction for abuse of discretion. United States v. Svete, 556 F.3d 1157, 1161 (11th Cir. 2009) (en banc).

We will not find reversible error unless we are left with a "substantial and ineradicable doubt" as to whether the jury was properly guided by the instructions. Id. A district court abuses its discretion "only if the requested instruction is correct, not adequately covered by the charge given, and involves a point so important that failure to give the instruction seriously impaired the party's ability to present an effective case." Id.

Diamond's first argument that the district court erred in its jury instruction is foreclosed by this Court's precedent. We define proceeds from mail and wire fraud as the total revenue brought in by a scheme, including gross receipts and profits. United States v. Jennings, 599 F.3d 1241, 1252 (11th Cir. 2010); United States v. Demarest, 570 F.3d 1232, 1242 (11th Cir. 2009).

We also find no merit in Diamond's contention that the district court erred by failing to instruct the jury that Diamond could not be found guilty of money laundering unless it also found him guilty of mail or wire fraud. The fourth element of the court's oral and written instructions to the jury substantially covered the requirement that, in order to convict Diamond of money laundering, the jury must first find that the property was proceeds from mail or wire fraud:

11

It's a federal crime for anyone to engage in certain kinds of transactions, commonly known as money laundering. The Defendant can be found guilty of this offense only if all the following are proved beyond a reasonable doubt: One, the Defendant knowingly engaged or attempted to engage in a monetary transaction. Two, the Defendant knew the transaction involved property or funds that were the proceeds of some criminal activity. Three, the property had a value of more than $10,000. Four, the property was, in fact, proceeds derived from wire fraud in violation of Title 18 United States Code Section 1343 and mail fraud in violation of Title 18 United States Code, Section 1341. And five, the transaction took place in the United States.

[Dkt. 144 at 71-72; see also dkt. 111 at 12].

Accordingly, we find no error with respect to the district court's jury instructions. See Svete, 556 F.3d at 1161.

IV.

We do not review the decisions of federal magistrates unless those decisions were first timely appealed to the district court. United States v. Schultz, 565 F.3d 1353, 1360 (11th Cir. 2009). A party timely appeals a magistrate's ruling if it serves and files an objection to the district court within fourteen days after the written order was served or the oral order was stated on the record. Fed. R. Crim. P. 59(a).

Here, Diamond never appealed the magistrate's adverse discovery rulings to the district court, and as such we cannot review them on appeal. See Schultz, 565

F.3d at 1360. We therefore dismiss Diamond's appeal on this issue.

V.

We review restrictions to cross-examination for an abuse of discretion. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1371 (11th Cir. 1994). Generally, the admission and exclusion of testimony falls within the broad discretion of the district court. See id. at 1370-71. The Confrontation Clause guarantees only that a defendant must have "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Kentucky v. Stincer, 482 U.S. 730, 739, 107 S. Ct. 2658, 2664 (1987) (emphasis in original).

The district court excluded a portion of Victoria Angela's testimony that centered around a conversation she had with another Forex trader who said that young traders who admit fault were more likely to be successful in the long-run. To the extent this out-of-court statement was offered for its truth, it was hearsay. See United States v. Peaden, 727 F.2d 1493, 1498-99 (11th Cir. 1984). Diamond claims that the court should have allowed it for the purpose of establishing Angela's motive for continuing to invest with Diamond. However, we find no abuse of discretion in the district court's conclusion that these motives would be irrelevant to whether Diamond intended to defraud. See United States v. Elliott,

13

62 F.3d 1304, 1308-09 & n.5 (11th Cir. 1995).

The district court also excluded a portion of Diana Cloud's testimony pertaining to her business interest in a space flight project and her desire "to help improve people's well-being through raising vibrational energies of the world." Again, we find no abuse of discretion in the district court's decision to exclude this testimony as irrelevant. See id.

## VI.

When there are no errors, or only a single error, there can be no cumulative error. United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004). Here, we have found that the district court committed only one error, its ex parte communication with the jury on Count 13. Thus, we need not engage in the cumulative error analysis.

Upon review of the record and consideration of the parties' briefs, we vacate and remand Diamond's money laundering conviction on Count 13 and affirm his other convictions.

AFFIRMED IN PART, VACATED AND REMANDED IN PART, AND DISMISSED IN PART.[9]

---

[9] Diamond's request for oral argument is DENIED.

14