**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4715**

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

VICTORIA L. SPROUSE,

Defendant – Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Martin K. Reidinger, District Judge. (3:07-cr-00211-MR-2)

Argued: October 25, 2012                    Decided: April 8, 2013

Before DUNCAN and DIAZ, Circuit Judges, and Catherine C. EAGLES, United States District Judge for the Middle District of North Carolina, sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellant. William Robert Terpening, NEXSEN PRUET, PLLC, Charlotte, North Carolina, for Appellee. **ON BRIEF:** David A. Brown, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellant. Peter C. Anderson, ANDERSON TERPENING PLLC, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Victoria Sprouse was convicted of various offenses arising from a mortgage fraud scheme. Prior to sentencing, the district court ordered a new trial as to all offenses in light of the Supreme Court's decision in Skilling v. United States, 130 S. Ct. 2896 (2010), concluding that its honest services fraud instructions to the jury constituted plain error. On appeal, the government contends that the district court misapplied the burden of proof with respect to the "substantial rights" prong of the plain error analysis. We agree with the government that it was Sprouse's burden to show that the instructional error affected her substantial rights, which in this context required Sprouse to show that the jury actually convicted her based upon the error. Because Sprouse failed to satisfy that burden, we reverse the district court's order granting a new trial and remand for sentencing.

I.

A.

Between 2000 and 2004, Victoria Sprouse provided services as a closing attorney and notary public for approximately 210 real estate transactions in and around Charlotte, North

2

Carolina.[1]  The transactions were in fact part of a conspiracy to defraud mortgage lenders, from which Sprouse received nearly $235,000 in attorney fees.  The majority of these fraudulent transactions were "house-flipping" schemes.

In a flip transaction, a property is sold by one party to another and, on that same day or very shortly thereafter, re-sold to a third party at a higher price.  The first transaction is a cash sale, and the inflated re-sale is made possible by a loan from an unsuspecting lender.  The loan is premised on an inflated real-estate appraisal, falsified loan application documents, and fake title opinions.  Participants of the scheme benefit either through the collection of fees for work fraudulently performed, or through a cut of the "profits" generated from the re-sale of the property at an inflated value.

To facilitate the financing and closing of the flip transactions, Sprouse prepared and submitted false title opinions, filed and recorded false deeds of trust, delayed recording of documents to hide the source of subordinate financing, falsely notarized and dated documents, and otherwise falsely verified the accuracy of closing documents.  An example

---

[1] We summarize the evidence in the light most favorable to the government, the prevailing party at trial.  See United States v. Jefferson, 674 F.3d 332, 341 n.14 (4th Cir. 2012).

3

of a typical house-flipping scheme will help illustrate Sprouse's role in the conspiracy.

In 2001, Karin Jo Sholtis purchased several properties and immediately resold them to Stephen Hawfield. Sprouse acted as the closing attorney on both halves of the flip transactions. When Sholtis visited Sprouse's office, Sprouse had her sign a stack of documents for each transaction within minutes of one another. Sprouse offered no explanation for what Sholtis was signing, and told Sholtis not to date anything because Sprouse "would fill everything in" herself. J.A. 284, 325-26. Although Sholtis brought no money with her, Sprouse signed settlement statements certifying that Sholtis brought a total of $504,000 in cash to the closing. At one point during the closing, Sprouse asked Hawfield for payment and read a series of amounts to him while Hawfield wrote checks for amounts that matched the cash purportedly brought by Sholtis.

Later that year, Sprouse again acted as the closing attorney as Sholtis purchased a number of properties and immediately re-sold them to Hawfield. Although the closing documents were purportedly signed by Sholtis, Hawfield actually forged her signature on each of them, and Sprouse notarized each of the deeds, attesting that Sholtis had personally appeared before her to sign. Sprouse also signed settlement statements certifying that Sholtis brought approximately $900,000 in cash

4

to the closing, when Sprouse knew that Hawfield actually provided the money.

The flip scheme we describe is representative of the vast majority of the 210 transactions that the government alleged to be fraudulent. The remaining transactions were either primary residence schemes or decorator distribution schemes. The primary residence scheme was similar to a traditional house-flipping scheme, except that the buyer on the second half of the transaction would falsely represent on the loan application that he would be using the property as his primary residence. As a result, the buyer would receive more favorable financing terms. The decorator distribution scheme, on the other hand, involved the co-conspirators obtaining a loan with favorable terms by falsely representing that "cash from buyer" was provided as down payment. The cash purportedly paid by the buyer was actually provided after closing and drawn from so-called interior decorator disbursements from the lender. The interior decorations were never performed, and the scheme allowed the buyers to obtain loans with beneficial terms without providing any down payment. Sprouse's involvement was the same in these schemes as in the Sholtis/Hawfield transaction, as she would falsify documents and fail to perform her duties as an attorney and notary public on closing documents.

B.

5

A federal grand jury indicted Sprouse on three counts of mail fraud, nine counts of bank fraud, three counts of conspiracy to commit fraud,[2] two counts of conspiracy to commit money laundering, two counts of promotional money laundering, one count of money laundering, four counts of perjury, and three counts of obstruction of justice.[3] Each count of the indictment that charged a scheme or artifice to defraud (fifteen in all) included language accusing Sprouse of involvement with a scheme "to defraud financial institutions and others of money and their intangible right to honest services." J.A. 32-80. In addition, because the money laundering offenses relied upon the fraud charges as predicate crimes, they too implicitly incorporated the honest services language.

At trial, the government called Richard Poe. Poe, who at the time of trial was an attorney,[4] was qualified as an expert on

---

[2] Sprouse was charged with two counts of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. The indictment charged that the objects of the § 371 conspiracies included mail, wire, and bank fraud, as well as making false statements to banks. In a separate count, Sprouse was also charged with conspiracy to defraud financial institutions and others through mail, wire, and bank fraud, in violation of 18 U.S.C. § 1349.

[3] The district court severed the perjury and obstruction of justice charges for the purposes of trial. The government ultimately dismissed those charges without prejudice.

[4] As the district court noted in its attachment to its order granting Sprouse's motion for new trial, Poe was disbarred in (Continued)

an attorney's role and ethical duties in residential real estate transactions. He explained the residential loan application process and the closing attorney's responsibilities related to the transaction. Specifically, Poe testified that as closing attorney, Sprouse's duties included preparing the preliminary title opinion, creating the HUD-1 settlement statement, and reviewing the parties' contract for accuracy. Poe also testified that the closing attorney is presumed to represent both the buyer and the lender, and serves as the "eyes and ears of the lender," notifying the lender if something occurs "at the closing transaction that the lender needs to know about." J.A. 147, 175.

After hearing testimony from twenty-seven other witnesses over eight days, and considering 597 exhibits, the jury found Sprouse guilty of all counts except one mail fraud offense.[5] In

_____

June of 2010. There has been no suggestion, however, by either the district court or Sprouse, that Poe's testimony was not truthful or accurate.

[5] Sprouse testified in her own defense. She denied being part of a conspiracy to defraud even while she admitted that a number of the closing documents she had either signed or notarized were false. According to Sprouse, she had been sloppy and inattentive in her law practice, but she denied that she intended to defraud anyone. Sprouse also called witnesses who described how common it was to make a mistake in the processing of closing documents. Finally, several other witnesses attested to Sprouse's honesty and integrity.

addition, the jury found, in special verdicts, that the objects of the §§ 371 and 1349 conspiracies included mail fraud, wire fraud, and bank fraud, and that the objects of the two § 371 conspiracies also included making false statements to banks.

## C.

Prior to sentencing, the district court ordered the parties to file briefs addressing the impact of the Supreme Court's decision in Skilling v. United States, 130 S. Ct. 2896 (2010), "on any issue remaining in [the] case." J.A. 2113-15. In Skilling, a case decided three months after Sprouse was convicted, a former Enron executive was charged with conspiracy to commit securities and wire fraud. 130 S. Ct. at 2908. The indictment alleged that the object of the conspiracy was to deprive company shareholders of their right to Skilling's honest services. Id. Appealing his conviction, Skilling argued that the honest services fraud statute was unconstitutionally vague, and therefore violated his due process rights. Id. at 2928-29. The Court agreed and confined the reach of § 1346 honest-services fraud to bribery and kickback schemes. Id. at 2931.

Before the district court, the government conceded that because no bribery or kickbacks had been alleged in Sprouse's case, the court should not have instructed the jury that it could convict Sprouse for fraud on an honest-services theory.

8

But because Sprouse did not object to the instructions at trial, the government argued it was her burden to show a plain error warranting relief. Applying the standard, the government contended that Sprouse could not show that the jury in fact convicted her based on the now-improper honest-services theory because the government had presented ample evidence at trial to support the convictions on a valid theory of pecuniary fraud. Alternatively, the government argued that the motion for a new trial should, at least, be denied as to the jury's verdicts on the § 371 conspiracy counts because the jury found that the objects of each of the conspiracies included making false statements to a bank, a separate offense from the mail and wire fraud objects for which the court gave the honest-services instruction.

Sprouse, on the other hand, disputed that the plain error standard applied, insisting that the error required the court to vacate her convictions and grant a new trial because it was "impossible to know that the verdict was not based solely on the invalid honest services" theory. J.A. 2122-27.

Reviewing the instructions for plain error, the district court first determined that the honest services theory of the case had "so permeated the proceedings . . . that it is impossible to tell whether the jury may well have convicted the Defendant based entirely on behavior that does not violate the

9

statute." J.A. 2412. Second, the district court rejected the government's contention that the special verdict form demonstrated that Sprouse's two § 371 conspiracy convictions rested on a separate, valid theory, and therefore should be affirmed.

Highlighting statements from the government's opening statement and closing arguments, the court concluded that the overarching theme of the case was honest services, rather than pecuniary, fraud, and that nearly all of the evidence presented by the government was probative of the honest-services theory only. In the court's view, the honest-services error also affected the outcome of the trial due to a "spillover" of prejudicial evidence that tainted the jury's verdict on otherwise sustainable counts. As a result, the district court granted Sprouse's motion for a new trial.

This appeal followed.

## II.

The issue before us is whether the district court, in granting Sprouse's motion for a new trial, properly concluded that Sprouse had shown plain error in the jury instructions. The government's principal argument is that the district court misapplied the plain error standard by requiring Sprouse to show only that it was impossible to tell whether the jury convicted

10

her based upon admittedly defective instructions, rather than that Sprouse's convictions actually resulted from the instructional error.

According to the government, if the district court could not tell whether the jury convicted Sprouse based on an honest-services theory, then plain error review dictates that the verdicts be affirmed because the government presented ample evidence of a money-or-property theory of fraud that was untainted by the Skilling error and upon which the jury could have relied to convict. Relatedly, the government argues that the district court should have been confident that the jury's verdicts rested on a proper theory of conviction because the special verdicts on the § 371 conspiracy counts necessarily show that the jury convicted Sprouse based on what the government describes as a conventional "money-or-property theory of bank fraud, wire fraud, and mail fraud." Appellant's Br. at 42. Alternatively, the government argues that, at a minimum, the district court erred in vacating Sprouse's convictions on the § 371 conspiracy counts because the jury specifically found an object of the conspiracy--the making of a false statement under § 1014--that was untainted by the honest-services evidence.

We agree with the government on its principal argument, which is fully dispositive of this appeal. Accordingly, we do not discuss further the government's alternative contentions.

11

A.

Federal Rule of Criminal Procedure 33 provides that a trial court may, on a defendant's motion, grant a new trial "if the interest of justice so requires." We have observed that "a court should exercise its discretion to grant a new trial sparingly, and that it should do so only when the evidence weighs heavily against the verdict." United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotations omitted). We review a district court's decision to grant a motion for new trial for abuse of discretion. United States v. Robinson, 627 F.3d 941, 948 (4th Cir. 2010). Furthermore, "[a] district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." United States v. Wilson, 624 F.3d 640, 649 (4th Cir. 2010).

In this case, Sprouse's motion for a new trial was premised on an instructional error to which she did not object. When a defendant fails to object to a jury instruction, even if there were no legal grounds for challenging the instruction at the time it was given, a district court should deny a motion for a new trial in the absence of plain error. Fed. R. Crim. P. 52(b); see also United States v. Pelisamen, 641 F.3d 399, 404 (9th Cir. 2011) (citing Johnson v. United States, 520 U.S. 461,

12

464-68 (1997)).  To prevail, a defendant must demonstrate that (1) there was an error, (2) the error was clear or obvious, rather than subject to reasonable dispute, (3) the error affected the defendant's "substantial rights," and (4) the error "seriously affects the fairness, integrity, or public reputation of the judicial proceedings."  United States v. Marcus, 130 S. Ct. 2159, 2164 (2010); see also United States v. Olano, 507 U.S. 725, 732-35 (1993).

The government concedes, and we agree, that Sprouse met her burden on the first two prongs of the test.  Therefore, we turn our attention to whether Sprouse has shown that the error affected her substantial rights.  Our analysis is governed by United States v. Hastings, 134 F.3d 235 (4th Cir. 1998), where we clarified the showing that a defendant must make to satisfy the substantial rights prong in the context of jury instructions.

The defendant in Hastings was convicted of multiple crimes, including "using or carrying a firearm during and in relation to a drug trafficking offense," in violation of 18 U.S.C. § 924(c)(1).  Id. at 237.  A subsequent Supreme Court decision rendered the jury instructions regarding the meaning of the term "use," as used in that count, erroneous.  Id.  Reviewing the defendant's conviction for plain error, we held that a defendant is entitled to reversal "only upon a showing that 'the error

13

does affect substantial rights,' that is, that the error actually affected the outcome of the proceedings." Id. at 240 (quoting Olano, 507 U.S. at 735). We reiterated this high standard throughout the opinion, stating that the burden "requires [a defendant] to show that the jury actually convicted him based upon [the erroneous instruction]." Id. at 243 (emphasis added). "Importantly, it is not enough for [the defendant] to establish that it is impossible to tell whether the verdict returned by the jury rested solely on the misinstruction, for such a showing would establish only that the error was not harmless." Id. Applying this standard to the defendant in Hastings, we held that he could not establish that the instruction at issue had affected his substantial rights because "in making the factual finding necessary to convict under the erroneous instruction, the jury necessarily found facts establishing [a conviction under the valid instruction]." Id. at 244.

Sprouse attempts to complicate Hastings's straightforward holding, arguing that we intended to create a more lenient "reasonable probability" standard. In support of this contention, Sprouse notes that one of the cases cited by the Hastings court uses language to that effect. See id. at 240 (citing United States v. McKinney, 954 F.2d 471, 476 (7th Cir. 1992)). Sprouse asks us to "modify" the Hastings holding by

14

"inserting 'probably' or 'likely' in place of 'actually.'" Appellee's Br. 16. We decline that invitation, however, as it would rewrite our clear and unmistakable holding in Hastings.

B.

In finding that the instructional error was plain, the district court concluded that the error "so permeated the proceedings" that it was impossible to tell whether, with respect to any of the counts for which the court had given an honest-services instruction, the jury had convicted Sprouse based upon a valid theory. J.A. 2412. The district court also believed that the "errors regarding honest service fraud also could have affected the outcome of the trial by allowing for 'spillover' of prejudicial evidence into an otherwise sustainable count." J.A. 2425.

We conclude that the district court's ruling misapplied our holding in Hastings. We made clear there that a conviction should not be reversed for plain error simply because it is "impossible to tell" whether it rested on an invalid instruction. See Hastings, 134 F.3d at 243. Moreover, although Skilling held that an error occurs when a jury is instructed on alternative objects of a conspiracy and returns a general verdict that may rest on a legally invalid theory of honest-services fraud, that case also teaches that the error does not necessarily require reversal in every case. Skilling,

15

130 S. Ct. at 2934. Indeed, when Skilling itself was remanded to the Fifth Circuit, that court affirmed the conspiracy conviction despite the honest-services instructional error because it found the error to be harmless. See United States v. Skilling, 638 F.3d 480, 483-84 (5th Cir. 2011) (applying harmless error review, as the defendant had objected to the honest services instructions at trial), cert. denied, 132 S. Ct. 1905 (2012).

The district court here concluded that because it was "impossible to tell" the ground upon which the jury rested its verdicts, Sprouse had satisfied her burden under plain error review. Sprouse, however, was required to demonstrate that her convictions actually rested on the invalid honest-services theory. The district court instead effectively flipped the burden of proof by requiring the government to show that the error was not harmless.[6] This mistake was an error of law that we are bound to correct.

The district court also concluded that Sprouse's substantial rights as to all of the honest services-related convictions were necessarily affected by the instructional error

---

[6] We acknowledge that the district court's order in certain places purports to apply plain error review. But as we explain infra, the district court's analysis is flawed nonetheless in that it fails to give proper weight to the overwhelming evidence supporting the government's theory of pecuniary fraud.

16

because "all of the evidence presented at [Sprouse's] trial related to honest services fraud." J.A. 2415. We do not agree with the district court's view of the evidence.

It bears remembering that the government alleged two theories in support of the fraud charges: conventional pecuniary fraud and fraud based on a deprivation of honest services. The government also charged Sprouse with conspiring to knowingly make false statement to lenders. Many of the statements made by the government at trial that the district court quotes as examples of an overarching theme of honest-services fraud are equally relevant to the charges of pecuniary fraud and making false statements to lenders. See, e.g., J.A. 2417 (the government's opening statement describing Sprouse's dishonesty), 2423 (the government's closing arguments describing Sprouse's forging of documents and falsely notarizing warranty deeds). Similarly, while it is certainly true that the evidence of Sprouse's misrepresentations and violations of her ethical duties as an attorney and a notary public during real estate closings was relevant to the government's honest-services theory of fraud, the evidence was equally probative of Sprouse's knowledge and intent to defraud with respect to the pecuniary fraud theory, as well as Sprouse's knowledge as to the counts alleging a conspiracy to make false statements to lenders.

In fact, the absence of a mens rea was Sprouse's principal defense at trial.  In her opening statement, during her trial testimony, and again in her summation to the jury, Sprouse admitted that she had been sloppy and inattentive when processing closing documents, which led to her being taken advantage of by others.  Sprouse insisted nonetheless that she lacked the specific intent to commit the charged offenses.  For that reason, evidence describing Sprouse's failure to discharge her duties as an attorney and notary public in residential real estate transactions, while admittedly probative of the government's now-invalid honest-services theory, was also relevant to show Sprouse's intent and knowledge with respect to those theories upon which a jury could properly convict.

Similarly, the district court's characterization of the pecuniary fraud theory as an "afterthought" we think ignores the interrelation of the two theories.  In our view, the conduct undergirding each theory of fraud was largely the same, and the facts supporting the banks' losses and Sprouse's pecuniary gain were uncontroverted.  As a result, the government's evidentiary presentation at trial rightfully focused on whether Sprouse had the requisite intent when she engaged in the lies, misrepresentations, and forgeries underlying both theories of fraud.

As to that question, any reasonable jury concluding that Sprouse intended to defraud lenders of her honest services would necessarily have found that she intended to defraud those same lenders of money. By way of example, in the Sholtis/Hawfield transactions--which are representative of the other counts of the superseding indictment alleging fraud--had the jury convicted Sprouse of honest services fraud, it would have necessarily found that Sprouse, with the intent to defraud, falsely represented that Sholtis brought money to the closings, and notarized Sholtis's forged signatures, thereby denying the lenders of her honest services while purporting to act in their interest. Similarly, for the jury to have convicted Sprouse of pecuniary fraud as to those same transactions, it must have found that Sprouse, with the intent to defraud, falsely represented that Sholtis brought money to the closings, and notarized Sholtis's forged signatures, thereby depriving the lenders of a pecuniary interest (i.e., the loan proceeds and attorney fees). Because the evidence showing that the banks suffered a pecuniary loss as a result of the Sholtis/Hawfield transactions was both overwhelming and uncontroverted, no reasonable jury could have convicted Sprouse of honest services fraud, but acquitted her of pecuniary fraud on these facts. We find that the same holds true with respect to the other counts alleging fraud.

19

In sum, because Sprouse failed to object at trial to the Skilling instructional error, it was her burden to show that her convictions actually rested on the invalid honest-services instructions. Sprouse failed to meet that burden here, and the district court abused its discretion in concluding otherwise.

## III.

For these reasons, we reverse the order of the district court granting Sprouse a new trial, reinstate her convictions in toto, and remand the case for sentencing.

REVERSED AND REMANDED