(Slip Opinion)          OCTOBER TERM, 2009          1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* MARCUS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 08–1341.   Argued February 24, 2010—Decided May 24, 2010

Respondent Marcus was convicted of engaging in forced labor and sex trafficking between January 1999 and October 2001.  On appeal, he pointed out for the first time that the federal statutes he violated did not become law until October 2000.  Thus, he claimed, the indictment and evidence permitted at trial allowed a jury to convict him exclusively on the basis of preenactment conduct in violation of the *Ex Post Facto* Clause.  He conceded that he had not raised this objection in the District Court, but argued that because the constitutional error was plain, his conviction must be set aside.  The Second Circuit agreed and vacated the conviction.  In doing so, the court held that, even in the case of a continuing offense, retrial is necessary if there is "any possibility, no matter how unlikely, that the jury could have convicted based exclusively on pre-enactment conduct."  The court noted that this was "true even under plain error review."

*Held:* The Second Circuit's plain-error standard conflicts with this Court's interpretation of the plain-error rule.  An appellate court may recognize a "plain error that affects substantial rights," even if that error was "not brought" to the district court's "attention."  Fed. Rule Crim. Proc. 52(b).  This Court's cases interpret this rule such that an appellate court may, in its discretion, correct an error not raised at trial only when the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

   The standard the Second Circuit applied in this case is inconsistent with the third and fourth of these criteria.  To begin, it is irreconcilable with the criterion that the error "affec[t] the appellant's substan-

tial rights," *Puckett* v. *United States*, 556 U. S. ___, ___. This condition requires the error to be prejudicial, meaning that there is a reasonable probability that the error affected the trial's outcome, not that there is "*any possibility*," however remote, that the jury could have convicted based exclusively on preenactment conduct.

Nor does this error fall within the category of "structural errors" that may "affect substantial rights" regardless of their actual impact on an appellant's trial. *Id.*, at ___. Here, a jury instruction might have minimized or eliminated the risk that Marcus would have been convicted based solely on preenactment conduct. A reviewing court should find it no more difficult to assess the failure to give such an instruction than to assess numerous other instructional errors previously found nonstructural, see, *e.g.*, *Hedgpeth* v. *Pulido*, 555 U. S. ___ *(per curiam)*. The Court further rejects Marcus' argument that the error at issue should be labeled an *Ex Post Facto* Clause violation, and that all such violations should be treated as special, structural errors warranting reversal without a showing of prejudice. As an initial matter, the Government never argued that the statute that criminalized Marcus' conduct applied retroactively, and Marcus' claim is thus properly brought under the Due Process, and not the *Ex Post Facto,* Clause. Moreover, we see no reason why errors similar to the one at issue in this case, taken as a class, would automatically affect substantial rights without a showing of prejudice.

In any event, the Second Circuit's "any possibility," however remote, standard also cannot be reconciled with the criterion that "the error seriously affec[t] the fairness, integrity or public reputation of judicial proceedings." *Puckett, supra,* at ___ (internal quotation marks omitted). Under the Second Circuit's approach, a retrial would be required even where the evidence supporting conviction consists of a few days of preenactment conduct along with several continuous years of identical postenactment conduct. Given the tiny risk that a jury would base its conviction in these circumstances on the few preenactment days alone, such an error is most unlikely to cast serious doubt on the fairness, integrity, or public reputation of the judicial system. Pp. 3–8.

538 F. 3d 97, reversed and remanded.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, GINSBURG, and ALITO, JJ., joined. STEVENS, J., filed a dissenting opinion. SOTOMAYOR, J., took no part in the consideration or decision of the case.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 08–1341

UNITED STATES, PETITIONER *v.* GLENN MARCUS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[May 24, 2010]

JUSTICE BREYER delivered the opinion of the Court.

The question before us concerns an appellate court's "plain error" review of a claim not raised at trial. See Fed. Rule Crim. Proc. 52(b). The Second Circuit has said that it must recognize a "plain error" if there is "*any possibility*," however remote, that a jury convicted a defendant exclusively on the basis of actions taken before enactment of the statute that made those actions criminal. 538 F. 3d 97, 102 (2008) *(per curiam)* (emphasis added). In our view, the Second Circuit's standard is inconsistent with this Court's "plain error" cases. We therefore reverse.

I

A federal grand jury indicted respondent Glenn Marcus on charges that he engaged in unlawful forced labor and sex trafficking between "'January 1999 and October 2001.'" *Id.,* at 100; see also 18 U. S. C. §§1589, 1591(a)(1). At trial, the Government presented evidence of his conduct during that entire period. 538 F. 3d, at 100. And a jury found him guilty of both charges. *Ibid.*

On appeal, Marcus pointed out for the first time that the statutes he violated were enacted as part of the Trafficking Victims Protection Act of 2000 (TVPA), which did not

become law until October 28, 2000. §112(a)(2), 114 Stat. 1486. Marcus noted that the indictment and the evidence presented at trial permitted a jury to convict him exclusively upon the basis of actions that he took before October 28, 2000. And for that reason, Marcus argued that his conviction violated the Constitution—in Marcus' view, the *Ex Post Facto* Clause, Art. I, §9, cl. 3. Marcus conceded that he had not objected on these grounds in the District Court. Letter Brief for Appellant in No. 07–4005–cr (CA2), p. 12. But, he said, the constitutional error is "plain," and his conviction therefore must be set aside. *Id.*, at 13.

The Government replied by arguing that Marcus' conviction was for a single course of conduct, some of which took place before, and some of which took place after, the statute's enactment date. 538 F. 3d, at 101. The Constitution, it said, does not forbid the application of a new statute to such a course of conduct so long as the course of conduct continued *after* the enactment of the statute. See, *e.g., United States* v. *Harris*, 79 F. 3d 223, 229 (CA2 1996); *United States* v. *Duncan*, 42 F. 3d 97, 104 (CA2 1994). The Government conceded that the conviction could not rest exclusively upon conduct which took place before the TVPA's enactment, but it argued that the possibility that the jury here had convicted on that basis was "'remote.'" 538 F. 3d, at 102. Hence, the Government claimed, it was highly unlikely that the judge's failure to make this aspect of the law clear (say, by explaining to the jury that it could not convict based on preenactment conduct alone) affected Marcus' "substantial rights." Letter Brief for United States in No. 07–4005–cr (CA2), p. 9. And the Government thus argued that the court should not recognize a "plain error." *Ibid.*

The Second Circuit noted that Marcus had not raised his *ex post facto* argument in the District Court. 538 F. 3d, at 102. The court also recognized that, under Circuit

precedent, the Constitution did not prohibit conviction for a "'continuing offense'" so long as the conviction rested, at least in part, upon postenactment conduct. *Id.*, at 101 (quoting *Harris, supra,* at 229). But, the court held, "even in the case of a continuing offense, if it was *possible* for the jury—wh[ich] had not been given instructions regarding the date of enactment—to convict *exclusively* on [the basis of] pre-enactment conduct, then the conviction constitutes a violation" of the *Ex Post Facto* Clause. 538 F. 3d, at 101. The court noted that this was "true even under plain error review." *Ibid.* In short, under the Second Circuit's approach, "a retrial is necessary whenever there is any possibility, *no matter how unlikely*, that the jury could have convicted based exclusively on pre-enactment conduct." *Id.,* at 102 (emphasis added).

The Government sought certiorari. And we granted the writ, agreeing to decide whether the Second Circuit's approach to "plain error" review, as we have set it forth, conflicts with this Court's interpretation of the "plain error" rule. See Fed. Rule Crim. Proc. 52(b).

## II

Rule 52(b) permits an appellate court to recognize a "plain error that affects substantial rights," even if the claim of error was "not brought" to the district court's "attention." Lower courts, of course, must apply the Rule as this Court has interpreted it. And the cases that set forth our interpretation hold that an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceed-

ings." *Puckett* v. *United States,* 556 U. S. ___, ___ (2009)
(slip op., at 6) (internal quotation marks omitted); see also
*United States* v. *Olano*, 507 U. S. 725, 731–737 (1993);
*Johnson* v. *United States,* 520 U. S. 461, 466–467 (1997);
*United States* v. *Cotton*, 535 U. S. 625, 631–632 (2002).

In our view, the Second Circuit's standard is inconsis-
tent with the third and the fourth criteria set forth in
these cases. The third criterion specifies that a "plain
error" must "affec[t]" the appellant's "substantial rights."
In the ordinary case, to meet this standard an error must
be "prejudicial," which means that there must be a rea-
sonable probability that the error affected the outcome of
the trial. *Olano, supra,* at 734–735 (stating that, to satisfy
the third criterion of Rule 52(b), a defendant must "nor-
mally" demonstrate that the alleged error was not "harm-
less"); see also *United States* v. *Dominguez Benitez*, 542
U. S. 74, 83 (2004). The Court of Appeals, however, would
notice a "plain error" and set aside a conviction whenever
there exists "any possibility, *no matter how unlikely*, that
the jury could have convicted based exclusively on pre-
enactment conduct." 538 F. 3d, at 102 (emphasis added).
This standard is irreconcilable with our "plain error"
precedent. See, *e.g., Olano, supra,* at 734–735.

We recognize that our cases speak of a need for a show-
ing that the error affected the "outcome of the district
court proceedings" in the "ordinary case." *Puckett,* 556
U. S., at ___ (slip op., at 6) (internal quotation marks
omitted). And we have noted the possibility that certain
errors, termed "structural errors," might "affect substan-
tial rights" regardless of their actual impact on an appel-
lant's trial. See *id.,* at ___ (slip op., at 11) (reserving the
question whether "structural errors" automatically satisfy
the third "plain error" criterion); *Cotton*, *supra*, at 632
(same); *Johnson, supra*, at 469 (same); *Olano, supra,* at
735 (same). But "structural errors" are "a very limited
class" of errors that affect the "'framework within which

the trial proceeds,'" *Johnson, supra,* at 468 (quoting *Arizona* v. *Fulminante*, 499 U. S. 279, 310 (1991)), such that it is often "difficul[t]" to "asses[s] the effect of the error," *United States* v. *Gonzalez-Lopez*, 548 U. S. 140, 149, n. 4 (2006). See *Johnson, supra,* at 468–469 (citing cases in which this Court has found "structural error," including *Gideon* v. *Wainwright*, 372 U. S. 335 (1963) (total deprivation of counsel); *Tumey* v. *Ohio*, 273 U. S. 510 (1927) (lack of an impartial trial judge); *McKaskle* v. *Wiggins*, 465 U. S. 168 (1984) (right to self-representation at trial); *Waller* v. *Georgia*, 467 U. S. 39 (1984) (violation of the right to a public trial); and *Sullivan* v. *Louisiana*, 508 U. S. 275 (1993) (erroneous reasonable-doubt instruction)). We cannot conclude that the error here falls within that category.

The error at issue in this case created a risk that the jury would convict respondent solely on the basis of conduct that was not criminal when the defendant engaged in that conduct. A judge might have minimized, if not eliminated, this risk by giving the jury a proper instruction. We see no reason why, when a judge fails to give such an instruction, a reviewing court would find it any more difficult to assess the likely consequences of that failure than with numerous other kinds of instructional errors that we have previously held to be non-"structural"—for example, instructing a jury as to an invalid alternative theory of guilt, *Hedgpeth* v. *Pulido*, 555 U. S. \_\_\_ (2008) *(per curiam)*, omitting mention of an element of an offense, *Neder* v. *United States*, 527 U. S. 1 (1999), or erroneously instructing the jury on an element, *Yates* v. *Evatt*, 500 U. S. 391 (1991); *Carella* v. *California*, 491 U. S. 263 (1989) *(per curiam); Pope* v. *Illinois*, 481 U. S. 497 (1987); *Rose* v. *Clark*, 478 U. S. 570 (1986).

Marcus argues that, like the Second Circuit, we should apply the label "*Ex Post Facto* Clause violation" to the error in this case, and that we should then treat all errors

so labeled as special, "structural," errors that warrant reversal without a showing of prejudice. See Brief for Respondent 27–29. But we cannot accept this argument. As an initial matter, we note that the Government has never claimed that the TVPA retroactively criminalizes preenactment conduct, see Brief for United States 16, and that Marcus and the Second Circuit were thus incorrect to classify the error at issue here as an *Ex Post Facto* Clause violation, see *Marks* v. *United States*, 430 U. S. 188, 191 (1977) ("The *Ex Post Facto* Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government" (citation omitted)). Rather, if the jury, which was not instructed about the TVPA's enactment date, erroneously convicted Marcus based exclusively on noncriminal, preenactment conduct, Marcus would have a valid due process claim. Cf. *Bouie* v. *City of Columbia*, 378 U. S. 347, 353–354 (1964) (applying Due Process Clause to *ex post facto* judicial decisions). In any event, however Marcus' claim is labeled, we see no reason why this kind of error would automatically "affect substantial rights" without a showing of individual prejudice.

That is because errors similar to the one at issue in this case—*i.e.*, errors that create a risk that a defendant will be convicted based exclusively on noncriminal conduct—come in various shapes and sizes. The kind and degree of harm that such errors create can consequently vary. Sometimes a proper jury instruction might well avoid harm; other times, preventing the harm might only require striking or limiting the testimony of a particular witness. And sometimes the error might infect an entire trial, such that a jury instruction would mean little. There is thus no reason to believe that *all or almost all* such errors *always* "affec[t] the framework within which the trial proceeds," *Fulminante, supra,* at 310, or "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for

determining guilt or innocence," *Neder, supra,* at 9 (emphasis deleted).

Moreover, while the rights at issue in this case are important, they do not differ significantly in importance from the constitutional rights at issue in other cases where we have insisted upon a showing of individual prejudice. See *Fulminante, supra,* at 306–307 (collecting cases). Indeed, we have said that "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred" are not "structural errors." *Rose, supra,* at 579. No one here denies that defendant had counsel and was tried by an impartial adjudicator.

In any event, the Second Circuit's approach also cannot be reconciled with this Court's fourth "plain error" criterion, which permits an appeals court to recognize "plain error" only if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson,* 520 U. S.*,* at 467 (internal quotation marks omitted). In cases applying this fourth criterion, we have suggested that, in most circumstances, an error that does not affect the jury's verdict does not significantly impugn the "fairness," "integrity," or "public reputation" of the judicial process. *Ibid.* (internal quotation marks omitted); *Cotton,* 535 U. S., at 633. The Second Circuit's "any possibility, no matter how unlikely" standard, however, would require finding a "plain error" in a case where the evidence supporting a conviction consisted of, say, a few days of preenactment conduct along with several continuous years of identical postenactment conduct. Given the tiny risk that the jury would have based its conviction upon those few preenactment days alone, a refusal to recognize such an error as a "plain error" (and to set aside the verdict) is most unlikely to cast serious doubt on the "fairness," "integrity," or "public reputation" of the judicial system.

We do not intend to trivialize the claim that respondent here raises. Nor do we imply that the kind of error at issue here is unimportant. But the rule that permits courts to recognize a "plain error" does not "remove" "seriou[s]" errors "from the ambit of the Federal Rules of Criminal Procedure." *Johnson*, *supra*, at 466. Rather, the "plain error" rule, as interpreted by this Court, sets forth criteria that a claim of error not raised at trial must satisfy. The Second Circuit's rule would require reversal under the "plain error" standard for errors that do not meet those criteria. We can find no good reason to treat respondent's claim of error differently from others. See *Puckett,* 556 U. S., at ___ (slip op., at 14) (reviewing the Government's violation of a plea agreement for "plain error"); *Cotton, supra,* at 631–632 (reviewing an indictment's failure to charge a fact that increased defendant's statutory maximum sentence for "plain error"); *Johnson, supra,* at 464 (reviewing the failure to submit an element of the crime to the jury for "plain error"). Hence we must reject the Second Circuit's rule.

For these reasons, the judgment of the Court of Appeals is reversed. As the Court of Appeals has not yet considered whether the error at issue in this case satisfies this Court's "plain error" standard—*i.e.*, whether the error affects "substantial rights" and "the fairness, integrity, or public reputation of judicial proceedings"—we remand the case to that court so that it may do so.

*It is so ordered.*

JUSTICE SOTOMAYOR took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–1341

_____

## UNITED STATES, PETITIONER *v.* GLENN MARCUS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[May 24, 2010]

JUSTICE STEVENS, dissenting.

The Court's opinion fairly summarizes our "plain error" cases and shows how the Court of Appeals applied a novel standard of review. Yet while it may have taken an unusual route to get there, I find nothing wrong with the Court of Appeals' judgment. I am more concerned with this Court's approach to, and policing of, Federal Rule of Criminal Procedure 52(b).

I

On October 28, 2000, Congress enacted the Trafficking Victims Protection Act (TVPA), 114 Stat. 1466. Respondent Glenn Marcus was convicted on two counts under the TVPA: one for sex trafficking, in violation of 18 U. S. C. §1591(a)(1), and one for forced labor, in violation of §1589. The indictment charged conduct that spanned from January 1999 to October 2001. See 538 F. 3d 97, 100 (CA2 2008) *(per curiam)*. The evidence introduced by the Government at trial spanned from 1998 to 2003. See 487 F. Supp. 2d 289, 292–297 (EDNY 2007). Most of the evidence supporting the sex trafficking charge, and some of the evidence supporting the forced labor charge, related to discrete events that occurred before October 28, 2000.

At trial, Marcus failed to ask the judge to inform the jury that his preenactment conduct was not unlawful, and the judge failed to give an instruction to that effect. If a

request had been made, it is clear that an appropriate instruction would have been given. Indeed, it is equally clear that the judge would have given such an instruction *sua sponte* if she had been aware of the effective date of the statute. No one disputes that error was committed in the way Marcus was charged and tried, and the error was sufficiently plain to be considered on appeal.

The record demonstrates that Marcus' sex trafficking conviction likely violated the *ex post facto* rule, as applied to trial proceedings through the Due Process Clause, see *ante*, at 6, because the postenactment evidence appears to have been insufficient to prove guilt beyond a reasonable doubt. See 538 F. 3d, at 105–106 (Sotomayor, J., concurring). Whether his forced labor conviction is invalid for the same reason is not clear. What is clear, however, is that neither the Second Circuit nor this Court has to determine that an error of constitutional magnitude occurred for Marcus to be eligible for relief. The question under Federal Rule of Criminal Procedure 52(b) is whether the trial error was sufficiently weighty to affect "substantial rights," and in my view this error surely was.

The Court notes that the error "created a risk that the jury would convict respondent solely on the basis of conduct that was not criminal when the defendant engaged in that conduct." *Ante*, at 5. That is true, and it is of fundamental concern because imposing criminal sanctions for nonproscribed conduct has always been considered a hallmark of tyranny—no matter how morally reprehensible the prosecuted party.

But in addition to the very real possibility that the jury convicted Marcus of sex trafficking *solely* on the basis of preenactment conduct, the error created another risk: namely, that both verdicts, returned after seven days of deliberation, rested in part on the jury's incorrect belief that the conduct before October 28, 2000, was unlawful. The error committed at trial not only prevented the jury

from focusing on the relevant time period, but it also distorted the jury's perception of Marcus' actions. By arguing that its preenactment evidence showed a violation of the TVPA, the Government effectively mischaracterized all of that evidence as descriptions of illegal behavior. And by giving the jury the impression that Marcus committed a much larger amount of criminal conduct than he really did, the error may have tipped the scales in favor of the prosecution, when the actual evidence of guilt would not have persuaded the jury to convict.

There is no need to decide whether the Government's arguments or the trial court's failure to give a curative instruction reached a level of unfairness sufficient to violate the Due Process Clause. For the foregoing reasons, I am convinced that the error prejudiced Marcus and seriously undermined the integrity of the proceedings. While I do not endorse the reasoning in the Court of Appeals' opinion,* I would therefore affirm its judgment.

---

\*The *per curiam* opinion contained a curious wrinkle, apart from misclassifying the trial error. See *ante*, at 6. The *per curiam* applied a standard from earlier Second Circuit cases that asked whether there was any possibility the jury convicted the defendant exclusively on the basis of preenactment conduct. 538 F. 3d 97, 101 (CA2 2008) (citing *United States* v. *Torres*, 901 F. 2d 205, 229 (1990), *United States* v. *Monaco*, 194 F. 3d 381, 386 (1999), and *United States* v. *Harris*, 79 F. 3d 223, 229 (1996)). As I read the Second Circuit precedents, however, they used that standard to determine whether an *ex post facto* violation occurred, not to determine whether that violation warranted vacatur of the conviction pursuant to Federal Rule of Criminal Procedure 52(b). *Torres* is the only one of the cited cases that even considered Rule 52(b), and its holding rested on a combination of factors, including that "the defendants brought the general ex post facto question to the attention of the district court," albeit imprecisely, and that a mandatory life sentence was imposed. 901 F. 2d, at 229. It is thus unclear why the Court of Appeals believed itself foreclosed from conducting a regular "plain error" review.

## II

The Court does not engage the merits of that judgment, but instead remands to the Court of Appeals to apply the test we have devised for evaluating claims of "plain error." That test requires lower courts to conduct four separate inquiries, each of which requires a distinct form of judgment and several of which have generated significant appellate-court dissensus; the test may also contain an exception for "structural errors," a category we have never defined clearly. With great concision, the Court manages to summarize all of these moving parts in about five pages. *Ante*, at 3–8.

Yet the language of Rule 52(b) is straightforward. It states simply: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." This is the mirror image of Rule 52(a), which instructs courts to disregard any error "that does not affect substantial rights." The Federal Rules thus set forth a unitary standard, which turns on whether the error in question affected substantial rights (either in a particular defendant's case or in the mine run of comparable cases), and they leave it to judges to figure out how best to apply that standard.

In our attempt to clarify Rule 52(b), we have, I fear, both muddied the waters and lost sight of the wisdom embodied in the Rule's spare text. Errors come in an endless variety of "shapes and sizes." *Ante*, at 6. Because error-free trials are so rare, appellate courts must repeatedly confront the question whether a trial judge's mistake was harmless or warrants reversal. They become familiar with particular judges and with the vast panoply of trial procedures, they acquire special expertise in dealing with recurring issues, and their doctrine evolves over time to help clarify and classify various types of mistakes. These are just a few of the reasons why federal appellate courts are "allowed a wide measure of discretion in the supervi-

sion of litigation in their respective circuits." *United States* v. *Olano*, 507 U. S. 725, 745 (1993) (STEVENS, J., dissenting). This Court's ever more intensive efforts to rationalize plain-error review may have been born of a worthy instinct. But they have trapped the appellate courts in an analytic maze that, I have increasingly come to believe, is more liable to frustrate than to facilitate sound decisionmaking.

The trial error at issue in this case undermined the defendant's substantial rights by allowing the jury to convict him on the basis of an incorrect belief that lawful conduct was unlawful, and it does not take an elaborate formula to see that. Because, in my view, the Court of Appeals properly exercised its discretion to remedy the error and to order a retrial, I respectfully dissent.