NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2142
_____

UNITED STATES OF AMERICA

v.

TROY A. BEAM,

Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-10-cr-00047-001)
District Judge:  Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 15, 2013

Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Filed: June 12, 2013)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Troy A. Beam appeals from a judgment of conviction in the U.S. District Court for

the Middle District of Pennsylvania.  Beam argues that the District Court erred in holding

that the government presented sufficient evidence of mens rea for conviction.  He also

asserts that the government impermissibly commented during trial on his failure to

respond to Internal Revenue Service ("IRS") communications.  In addition, Beam

contends that the District Court erred in declining to instruct the jury on his theory of defense. For the reasons stated below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

In February 2010, Beam, a trained accountant, was indicted on one count of corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a); one count of attempting to evade and defeat the payment of assessed taxes for tax years 1992 through 1998, in violation of 26 U.S.C. § 7201; and four counts of willful failure to file income tax returns for tax years 2003 through 2006, in violation of 26 U.S.C. § 7203. The events leading to the indictment began when, after hearing about a radio program speaker who had asserted that there was no law requiring American citizens to pay taxes, Beam contacted the speaker and obtained literature on the speaker's claim. In early 1996, Beam purchased at least two trusts from Save-A-Patriot Fellowship, an organization named in the literature, and began transferring personal and business assets to the trusts.

Subsequently, in late 1996, Beam purchased additional trusts from Commonwealth Trust Company ("CTC") and its promoter Wayne Rebuck, who testified that he "marketed [the trusts] as tools that appeared legitimate but had been successful to

hide assets . . . from the IRS and/or creditors." App. at 529-30. Rebuck also testified that he "clearly said [this] to Troy Beam and every other person [he] presented the program to." *Id.* In his presentations, Rebuck used letters from the IRS in an attempt to show that pure trust organizations have no tax requirements. Beam used the trusts to receive income, hold bank accounts, and encumber assets.

Around the time that Beam began reading the aforementioned literature and purchasing trusts, he filed a tax return for tax year 1995 claiming substantial business losses, which he carried back to eliminate his income tax liabilities for tax years 1992 through 1994. These claimed losses resulted in refunds totaling $49,839, which the IRS later found to be invalid. Beam filed substitutes for returns for tax years 1996 through 1998 and failed to file a personal federal income tax return for any year thereafter. In addition, none of Beam's trusts or entities filed income tax returns between 1999 and 2007.

In September 1998, after conducting an audit of Beam, IRS Agent Thomas Kurtz sent Beam a copy of his tax liability assessment, advising Beam of his taxes due. Beam did not respond. Kurtz then conducted a second audit of Beam covering tax years 1996 through 1998. In July 2001, Agent William Welsh sent Beam an initial notice of tax deficiency for tax years 1996 through 1998, in response to which Welsh received letters from persons representing Beam indicating that Beam would not be cooperating in the audit and stating that Welsh had no legal authority to conduct the audit. Beam also sent

3

letters to title companies urging them not to comply with IRS summonses. In addition, he made his clients sign non-disclosure agreements to prevent them from providing information to the IRS.

The IRS then commenced collection proceedings on Beam's tax debt from 1992 to 1998, which totaled approximately $1,383,838. Beam requested a series of collection due process hearings before the IRS appeals settlement officers, stating that he had no financial or beneficial interests in the entities whose assets the IRS was attempting to encumber, and arguing that the IRS had no authority to assess or collect taxes. In April 2002, an appeals officer wrote a letter to Beam stating that these arguments were frivolous.

In October 2005, the IRS issued Beam a notice of deficiency for federal income taxes for the years 1996 through 1998. In May 2006, Beam was given a final notice of the IRS's intent to levy his unpaid taxes and was advised of his right to a hearing. Beam requested the hearing, which was conducted in October 2006. In January 2007, the IRS notified Beam that his appeal was rejected and that the collection activities were proper. Beam was advised of his right to appeal this decision to the U.S. Tax Court, which he failed to do. Beam also failed to pay the taxes, penalties, and interest due, and was indicted in February 2010.

Beam pleaded not guilty to each count on which he was indicted and proceeded to trial. After a 14-day trial, the jury found Beam guilty on each of the charged counts. The

District Court denied Beam's post-trial motion for judgment of acquittal and sentenced him to 74 months' imprisonment. Beam then filed a timely notice of appeal.

## II.

The District Court had jurisdiction over this case under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

"We exercise plenary review over a district court's grant or denial of a motion for judgment of acquittal based on the sufficiency of the evidence, applying the same standard as the district court." *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009). For alleged errors not brought to a district court's attention, we review for plain error. Fed. R. Crim. P. 52(b). "We review a district court's decisions regarding jury instructions for abuse of discretion." *United States v. Hoffecker*, 530 F.3d 137, 167 (3d Cir. 2008).

## III.

Beam raises three issues on appeal: (1) whether the government presented sufficient evidence of mens rea for conviction; (2) whether the government impermissibly commented during trial on his failure to respond to IRS communications; and (3) whether the District Court erred in declining to instruct the jury on his theory of defense.

## A.

We turn first to Beam's challenge to the sufficiency of the evidence. In doing so, we must examine the totality of the evidence, both direct and circumstantial, and interpret the evidence in the light most favorable to the verdict winner. *Starnes*, 583 F.3d at 206. Our review after a guilty verdict is highly deferential, and we must uphold the jury's verdict if there is substantial evidence from which a rational trier of fact could find the elements of the crime beyond a reasonable doubt. *Id*. A jury may find the requisite mens rea on the defendant's part by drawing reasonable inferences from the evidence of the defendant's conduct. *Id*. at 213.

Beam argues that he relied on IRS representations that pure trust organizations were lawful and not taxable in good faith, and that this reliance negates the mens rea elements of his offenses (*i.e.*, acting "corruptly" under § 7212(a) and "willfully" under §§ 7201 & 7203). The IRS representations that Beam allegedly relied upon were letters that Rebuck distributed as a part of his CTC promotional literature, including a letter that someone from the IRS purportedly sent to an unrelated taxpayer that opined on the taxability of an unspecified trust. The evidence, however, also shows that when the IRS employees contacted Beam, they informed him that he was required to file tax returns and pay taxes on his income. As the District Court noted, "[n]o government official ever told Beam that his conduct was legal. In fact, they told him the opposite." Supp. App. at 4.

6

Furthermore, there is substantial evidence in the record concerning Beam's culpable state of mind, including, but not limited to, his background in accounting, letters he received from the IRS, and the testimony of witnesses who personally interacted with him. Additionally, the record shows that Beam "concealed his personal assets, provided misinformation to the IRS, accused IRS employees of misconduct, refused to cooperate with the IRS, and directed others to do the same." *Id.* Reasonable jurors could have found the requisite mens rea beyond a reasonable doubt by drawing reasonable inferences from the evidence of Beam's conduct. Thus, we conclude that there was sufficient evidence to support the jury's verdict.

B.

Beam also challenges the government's comments during trial on his silence with respect to the IRS audits. Specifically, Beam asserts that "IRS Agents Thomas Kurtz and William Welsh testified that they called, sent letters and made appointments to meet with Troy Beam, but that he would never respond or show up for meetings," and that "[b]ecause Troy Beam had a right to remain silent, the Government's use of his silence against him violates the Fifth Amendment." Appellant's Br. at 20. Beam admits that this alleged error was not brought to the District Court's attention, and thus our review is for plain error.

This Court may, in its discretion under Rule 52(b) of the Federal Rules of Criminal Procedure, correct an error not raised at trial where the appellant demonstrates

that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (internal quotation marks omitted).

The question of whether the government's comments were inappropriate under the Fifth Amendment invokes sub-issues of whether Beam actually invoked his right to remain silent and whether the Fifth Amendment's prohibition on comments pertaining to a defendant's silence extends to non-custodial situations, such as an IRS audit. However, in this case, we do not need to decide whether the government's comments were in error, or whether the error was clear or obvious, because, given the totality of the evidence presented to the jury, the government's alleged error cannot be said to have affected the outcome of the District Court proceedings. Hence, the alleged error did not affect Beam's substantial rights.

Thus, we hold that the government's commenting during trial on Beam's silence with respect to the IRS audits was not plain error.

## C.

Beam also alleges that the District Court erred in declining to instruct the jury as he proposed. Beam, at trial, requested the following instructions:

8

"An American citizen such as the defendant has a right to rely upon representations and statements made by the government and appearing in official publications or documents . . . . If you find in this case that the IRS has created uncertainty regarding the taxability of the income of 'pure trust organizations' and that Defendant Beam has relied on these statements of the IRS, then it shall be your duty to acquit the Defendant of the charges set forth in the indictment. When the law is vague or highly debatable, a defendant – actually or imputedly – lacks the requisite intent to violate it."

App. at 3902 & 3908. The District Court, however, instructed the jury in a manner similar to that contemplated by the Third Circuit Model Criminal Jury Instructions § 5.05, stating as follows:

"Willfully refers to a voluntary and intentional violation of a known legal duty. This means that the government must prove beyond a reasonable doubt that Mr. Beam knew his conduct was unlawful and intended to do something that the law forbids. To find that Mr. Beam acted willfully you must find that the evidence proved beyond a reasonable doubt that Mr. Beam acted with a purpose to disobey or disregard the law . . . . Mr. Beam's conduct was not willful if he acted through negligence, mistake, accident, or due to a good faith misunderstanding of the requirements of the law."

App. at 3589-90.

"A defendant is entitled to a theory of defense instruction if (1) he proposes a correct statement of the law; (2) his theory is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include an instruction of the defendant's theory would deny him a fair trial." *Hoffecker*, 530 F.3d at 176 (citation omitted).

Here, the District Court's decision to exclude Beam's preferred instruction did not deny him a fair trial. The District Court did not abuse its discretion in deciding that

9

Beam's proposed instruction was "unnecessary and superfluous," App. at 3353, and that the issue of willfulness "is adequately described in the model Third Circuit instructions." *Id.* at 3448.

IV.

For the foregoing reasons, we will affirm the District Court's judgment of conviction.