NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted March 22, 2013[*]
Decided June 13, 2013

**Before**

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-2855

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-10010 |
| MICHELLE D. SIEGEL, <br> *Defendant-Appellant*. | Michael M. Mihm, <br> *Judge*. |

**O R D E R**

After pleading guilty to one count of producing child pornography in violation of 18 U.S.C. § 2251(a), Michelle Siegel was sentenced to 288 months' imprisonment. On appeal, she contests for the first time the district court's calculation of her advisory guidelines range. Although we agree with her that the court erred, we conclude that the error was not

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. For that reason, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

so serious as to entitle her to relief under the plain error standard. We thus affirm the judgment of the district court.

Underlying Siegel's conviction is a video depicting her and her husband sexually abusing a two-year-old girl. The video was made in 2007 when the couple lived in Illinois; the victim was a neighbor's child whom they were babysitting. It was not discovered, however, until 2011. In the interim, Siegel and her husband had moved to California, where they lived during 2009 and 2010, and then moved back to Illinois. At the same time as the police recovered the video of the neighbor's child, they found images that Siegel had taken of her husband sexually assaulting their own two-year-old daughter in California. Siegel was not charged for that conduct in the case before us.

In calculating Siegel's advisory sentencing range under the U.S. Sentencing Guidelines, the court properly turned to U.S.S.G. § 2G2.1. That provision applies to cases in which the defendant produces child pornography by causing a minor to engage in sexually explicit conduct. As we noted, Siegel pleaded guilty to only one count, but the district court calculated her total offense level by assuming the existence of a hypothetical second count (sometimes called a "pseudo count") for the abuse of her own daughter. See U.S.S.G. § 2G2.1(d) & cmt. n.5. Siegel did not object to the use of this "pseudo count." With it, the district court calculated a total offense level of 43, which included a two-level adjustment for multiple counts under U.S.S.G. § 3D1.4. Siegel's total offense level, combined with her Category II criminal history, yielded a guidelines imprisonment "range" of life. The statutory maximum for her crime, however, is 30 years. This in effect transformed her advisory sentence from a range to a point: exactly 360 months. See 18 U.S.C. § 2251(e); U.S.S.G. § 5G1.1(a).

On appeal, Siegel argues that the district court should not have treated her case as if it had included a "pseudo count" covering the abuse of her daughter in California; that incident, she urges, does not qualify as relevant conduct for her offense of conviction. See U.S.S.G. § 1B1.3(a). Siegel points out a number of differences, which add up in the end to her conclusion: the sexually explicit recording of her daughter was made two years after the abuse of the neighbor's child; it occurred in a different state; she used different equipment to make the video; and she stored the two videos on different media. All told, she contends, these distinctions take the California abuse out of the realm of relevant conduct for the Illinois crime.

Siegel may have a point. For offenses that are not grouped, like crimes covered by U.S.S.G. § 2G2.1, see U.S.S.G. § 3D1.2(d), the guidelines limit relevant conduct to acts "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). On the other hand, had she raised the point in the district court, the

government may have been able to explain why the California conduct deserved consideration as a "pseudo count."

We have no need to resolve the point here. Even if, giving Siegel the benefit of the doubt, the events in California were not committed during the commission of the crime in Illinois, the bottom line for Siegel will be the same. Plain error analysis requires first that there has been an error, that it was not subject to reasonable dispute, and that it affected the outcome of the district court proceedings. See *Puckett v. United States,* 556 U.S. 129, 135 (2009). If all three of those requirements are met, the court must go on to ask whether that error seriously affected the "fairness, integrity, or public reputation" of judicial proceedings. *Id.* (quoting *United States v. Olano,* 507 U.S. 725, 736 (1993)).

Siegel's case founders on the third criterion: She cannot establish that the district court's presumed mistaken use of the "pseudo count" for the abuse of her daughter in California affected her substantial rights. See *United States v. Winters,* 695 F.3d 686, 689 (7th Cir. 2012). An error affects substantial rights if it results in a sentence that is more onerous. *United States v. Marcus,* 130 S. Ct. 2159, 2164 (2010). This is a possibility when a district court misapplies the Sentencing Guidelines and then relies on an erroneous guidelines range. See, *e.g., United States v. Pineda-Buenaventura,* 622 F.3d 761, 767 (7th Cir. 2010); *United States v. Avila,* 557 F.3d 809, 822 (7th Cir. 2009); see also *Peugh v. United States,* No. 12-62, 2013 WL 2459523 (U.S. June 10, 2013). In Siegel's case, however, the district court's misapplication of § 2G2.1(d) did not affect her imprisonment range. Without the two extra offense levels attributable to the "pseudo count," Siegel's total offense level in the absence of the statutory maximum would have been 41 and her imprisonment range 360 months to life. But because 360 months (30 years) was the maximum, her guidelines sentence remained 360 months exactly, just as it was under the district court's mistaken methodology. See 18 U.S.C. § 2251(e); U.S.S.G. § 5G1.1(a). Moreover, the sentencing transcript shows that the court recognized that the statutory maximum trumps the higher guidelines range, and it leaves no doubt that the court considered only the statutory maximum when imposing Siegel's below-guidelines sentence of 288 months. In the end the court did not rely on an incorrect guidelines calculation; there is thus no need for resentencing.

We AFFIRM the judgment of the district court.