GOULD, Circuit Judge,
dissenting:
I part ways with the majority’s conclusion that James did not suffer Strickland prejudice because of his counsel’s failure to object to the prosecutor’s improper voir dire.[1] In my view, there is a reasonable probability that James would have been acquitted if the prosecutor had not implied during voir dire that James was a violent kingpin by discussing notorious mob boss *691 John Gotti and his hitman Sammy “The Bull” Gravano with the veniremembers.
We have already correctly concluded on direct appeal that the prosecutor’s comments were “unnecessary and inappropriate.” United States v. James, 494 Fed.Appx. 745, 747 (9th Cir.2012). That is an understatement. The government’s interest “in a criminal prosecution is not that it shall win a case, but that justice shall be done.” Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). If the government was prosecuting an individual as a serial murderer, could it fairly refer to Jack the Ripper during voir dire? Or in a treason case, could the prosecutor invoke images of Benedict Arnold before the veniremembers? John Dillinger in an armed bank robbery case? A1 Capone in a federal tax evasion case? In my view, references to famous criminals during jury voir dire should not be a tool in the government’s arsenal while it is under a duty to conduct a fair trial. Such comparisons would unduly bias the veniremembers and undercut the presumption of innocence that “lies at the foundation of the administration of our criminal law.” Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895). Applying these principles here, I conclude that the prosecutor’s invocation of Gotti and Gravano in this case would have caused the jury to speculate, before the trial even began, that James was equally violent and dangerous, and these reckless and inappropriate voir dire questions almost surely had a negative effect on James’s prospects with the jury.
The majority reasons that because the voir dire was “brief’ and the government’s case “strong” there was no reasonable likelihood that the inappropriate comments affected the verdict. Ante at 689-90. But the government’s case against James rested in large part on the testimony of alleged coconspirator Naseer Hussain, which followed Hussain s favorable plea deal and promise to cooperate with the government. In closing, defense counsel strenuously argued to the jury that it should “utterly reject” Hussain’s testimony as “a pack of lies” resulting from his “very sweet deal” with prosecutors. The jury would have been hesitant to do so, however, if it recalled Gravano’s pivotal role in helping to take down John Gotti after Gravano accepted a generous plea deal and agreed to cooperate with the government. See United States v. Locascio, 6 F.3d 924, 929-30 (2d Cir.1993) (noting, in Gotti’s direct appeal, that Gravano’s testimony at trial “was especially damaging” because he was “a high-level insider”). James also provided a plausible explanation for his possibly incriminating statements in the phone call with his sister-in-law, with defense counsel arguing that James’s subsequent questions to her indicated that he did not have knowledge about her conduct and therefore was not involved ■ in the conspiracy.
The government’s case against James was not weak, but the jury may very well have acquitted James absent the prosecutor’s statements to the jury — before the trial even began — that implicitly compared James to John Gotti and the testifying coconspirator to Sammy Gravano. James “need not show that counsel’s deficient conduct more likely than not altered the outcome in the case,” Strickland, 466 U.S. at 693, 104 S.Ct. 2052, and I believe the reasonable probability standard is satisfied here. James is entitled to a trial in which jurors do not view him with images and tales of John Gotti and Sammy “The Bull” Gravano impressed in the jurors’ minds from voir dire. I would grant habeas relief and let James have a new trial where he is convicted or acquitted based solely on the evidence presented to the jury.

. The majority does not decide whether James’s claim of Strickland prejudice is foreclosed by our conclusion on direct appeal that the prosecutor’s improper statements did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings.” United States v. James, 494 Fed.Appx. 745, 747 (9th Cir.2012) (quoting United States v. Marcus, 560 U.S. 258, 262, 130 S.Ct. 2159, 176 L.Ed.2d 1012 (2010)). In my view, the two standards are different. While the "substantial rights” prong of plain error review has some overlap with Strickland's "reasonable probability that the error affected the outcome of the trial” standard, Marcus, 560 U.S. at 262, 130 S.Ct. 2159, the fourth prong of plain error is more stringent in that it requires a showing that the trial was seriously affected, and courts of appeal have discretion to ignore the error under the fourth prong even when the first three prongs are met. Puckett v. United States, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). Our memorandum disposition in James does not discuss whether there was a "reasonable probability” that appellant James would have been acquitted absent the prosecutor’s improper statements.