[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12865
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-00193-TWT-CMS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LESHANDA HUNTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 10, 2019)

Before ED CARNES, Chief Judge, TJOFLAT, and JORDAN, Circuit Judges.

PER CURIAM:

Leshanda Hunte appeals her convictions for one count of conspiracy to commit theft of government property, in violation of 18 U.S.C. § 371, and five substantive counts of theft of government property, in violation of 18 U.S.C. §§ 641 and 2.  She argues that the district court plainly erred when it denied her request at trial to speak with her attorney for five minutes about whether she would testify.

I.

Hunte and her husband, Raphael Menard, were convicted for fraudulently causing tens of thousands of dollars in tax refunds to be transferred to their bank accounts between September and November 2012.  Employees at their Chase Bank branch in Dunwoody, Georgia noticed the suspicious activity and froze the accounts.  When Hunte came in to attempt to unfreeze the accounts she was informed that the individuals whose refund checks she had received would need to come in with two forms of identification.  Hunte successfully unfroze $8,573 when she came to the bank with fake identification documents and an individual claiming to be a taxpayer named Joseph Allen.  But when Menard came to the bank with another individual claiming to be a taxpayer named Antonio Rubie, his attempt failed because the branch manager suspected the identification was fake.  Menard was arrested along with the coconspirator impersonating Rubie.  In Menard's car officers found an ID and credit card in Antonio Rubie's name along

2

with a sheet of paper on which "Antonio Rubie" had been written repeatedly in cursive.

At trial a witness named Pier Mason testified that she had sought assistance filing her taxes from a woman calling herself Shanda Johnson. Mason identified a tax return bearing her name and social security number, but testified that the rest of the information on the return was false and that she did not authorize the return to be filed. When Mason received only a $905 return despite being told by the IRS that it had paid a $2,905 return on her behalf, she called "Johnson," who told her that the IRS was lying. Mason demanded a Preparer Tax Identification Number but "Johnson" did not provide her one, and she was unable to contact "Johnson" again. A review of Mason's return showed that the missing $2,000 had been deposited in an account owned solely by Hunte. Several other witnesses testified identifying tax returns that contained their name and social security numbers but otherwise false information.

Before beginning the defense's case, Hunte's counsel informed the court that he needed to step outside to speak with Menard's counsel. The court instructed him to "do that now, because at some point I have got to advise . . . [Hunte] of her right to testify and not testify." The court then took a 35-minute recess. Hunte's counsel then requested additional time and the court took another 22-minute recess. Menard then took the stand. He admitted to participating in a tax fraud

3

scheme but denied that Hunte knew about it.  He testified that he asked Hunte to go with his coconspirator, Ruben Lawrence, to the bank to unfreeze the accounts, and that he did not tell her why the accounts were frozen.  On cross-examination he stated that Lawrence and Hunte were related.

After Menard's testimony the court advised Hunte that she had the right to testify or not testify and the decision was solely hers.  She said that she was "strongly considering" testifying and asked if she could have five minutes to decide, but the court said she needed to make a decision immediately.  She then said that she would not testify and the court asked if she had discussed the decision with her lawyers.  She responded that she wanted to speak with them, and the court said that she had had plenty of time to do that and that it had brought the question up before Menard's testimony.  Her attorney did not object, and Hunte stated that she would not testify.  The jury convicted her on all counts and the district court sentenced her to thirty months' imprisonment.

## II.

Hunte acknowledges that because she did not object to the alleged error before the district court we review only for plain error.  See United States v. Olano, 507 U.S. 725, 731, 113 S. Ct. 1770, 1776 (1993); Fed. R. Crim. P. 52(b).  Plain error occurs when there is (1) an error, (2) that is plain, and (3) that affects substantial rights.  United States v. McNair, 605 F.3d 1152, 1222 (11th Cir. 2010).

4

The error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. Id. To establish that an error affected her substantial rights, the appellant is ordinarily required to establish that there is "a reasonable probability that the error affected the outcome of the trial." United States v. Marcus, 560 U.S. 258, 262, 130 S. Ct. 2159, 2164 (2010). We make that determination "by weighing the record as a whole, examining the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of [the] defendant's guilt." United States v. Margarita Garcia, 906 F.3d 1255, 1267 (11th Cir. 2018) (quotation marks omitted).

The Supreme Court has recognized that certain structural errors might meet this test "regardless of their actual impact on an appellant's trial." Marcus, 560 U.S. at 263, 130 S. Ct. at 2164. Such "structural errors are a very limited class of errors that affect the framework within which the trial proceeds, such that it is often difficult to assess the effect of the error." Id. at 263, 130 S. Ct. at 2164–65 (quotation marks and alterations omitted). If an error is structural, we assume prejudice and there is no room for application of the harmless error rule. United States v. Roy, 855 F.3d 1133, 1142 (11th Cir. 2017).

Even if we assume that the district court erred by declining to grant Hunte more time to consider whether to testify, that error did not affect her substantial rights because there is no reasonable probability that it would have changed the

5

outcome of her trial.  As an initial matter, we can assess the effect of the error so it is not a structural error barring the application of the harmless error rule.  See United States v. Hung Thien Ly, 646 F.3d 1307, 1318 n.8 (11th Cir. 2011) (noting that binding precedent "suggests that harmless-error analysis applies to the right to testify").  Looking to the record as a whole and the considerable evidence presented by the government, there is no reasonable probability that Hunte's testimony would have changed the outcome of the trial.  It is not even clear that if Hunte had spoken with her attorney, she would have decided to testify.  And even if we assume that she would have, Menard testified that he was solely responsible for the fraudulent activity and that Hunte was unaware of the scheme.  The jury rejected that explanation, and there is no reason to believe that the jury would have believed Hunte if she had taken the stand and said the same thing, especially since the fraudulently obtained $2,000 involving taxpayer Pier Mason was deposited in an account owned solely by Hunte.

**AFFIRMED.**