*United States v. Maharaj*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of April, two thousand twenty-five.

Present:
> JOHN M. WALKER, JR.,
> MICHAEL H. PARK,
> STEVEN J. MENASHI,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                          22-171

SHIVANAND MAHARAJ.

> *Defendant-Appellant,*

ENRICO RUBANO, AKA RICK RUBANO,

> *Defendant.*

---

FOR APPELLEE:                     MATTHEW D. PODOLSKY, Michael D. Maimin, Assistant United States Attorneys, *for* Danielle R. Sassoon, Acting United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT: JAMESA J. DRAKE, Drake Law LLC, Auburn, ME.

Appeal from a judgment of the United States District Court for the Southern District of New York (Koeltl, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On July 11, 2019, a superseding indictment was filed charging Shivanand Maharaj with four counts in connection with his false-invoicing scheme targeting the American Federation of Television and Radio Artists ("AFTRA") Retirement Fund and the Screen Actors Guild and American Federation of Television and Radio Artists ("SAG-AFTRA") Health & Retirement Funds (together, the "Funds"). Count One charged Maharaj with participating in a conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. § 1349. Count Two charged Maharaj with honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 2. Count Three charged Maharaj with participating in a conspiracy to give and offer kickbacks because of and to influence the operation of an employee benefit plan, in violation of 18 U.S.C. § 371. Count Four charged Maharaj with giving and offering kickbacks because of and to influence the operation of an employee benefit plan, in violation of 18 U.S.C. §§ 1954 and 2.

On July 29, 2019, after a two-week trial, a jury found Maharaj guilty on all four counts. On January 12, 2022, the district court sentenced Maharaj to 44 months' imprisonment, to be followed by three years' supervised release. The district court also imposed a mandatory special assessment of $400, $1,846,665 in forfeiture, and $1,932,920.06 in restitution. Maharaj is currently serving his term of supervised release.

On appeal, Maharaj makes two primary arguments. First, he contends that the district court abused its discretion in allowing Zeynep Ekemen's testimony about Maharaj's prior

kickback scheme with Enrico Rubano. Second, Maharaj argues that Wharton's Rule bars punishment for his honest-services wire fraud conspiracy conviction. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

## I. Ekemen's Testimony at Trial

Maharaj argues that the district court erred when it overruled his objection to Ekemen's testimony about Maharaj's kickback scheme because it had little probative value and was unduly prejudicial. "We review a trial court's evidentiary rulings deferentially, and we will reverse only for abuse of discretion," which requires a determination "that the challenged evidentiary rulings were arbitrary and irrational." *United States v. Quinones*, 511 F.3d 289, 307-08 (2d Cir. 2007) (internal quotation marks omitted). An evidentiary error is "harmless if we can conclude with fair assurance that the jury's judgment was not substantially swayed by the error." *United States v. Paulino*, 445 F.3d 211, 219 (2d Cir. 2006) (internal quotation marks omitted).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019) (holding that the probative value of certain evidence "was not substantially outweighed by the risk of unfair prejudice as it did not involve

3

conduct any more sensational or disturbing than the crimes with which [the defendant] was charged") (cleaned up)).

The district court did not abuse its discretion in allowing Ekemen's testimony. First, the testimony was probative. Ekemen explained that she asked Maharaj to tell her "how long he ha[d] been doing this with" Rubano, and Maharaj responded that "his first deal with [Rubano] was back in college." App'x at 45. Maharaj shared the basics of the IT-invoicing/kickback scheme with Ekemen, and told her that the fruits of his scheme with Rubano had allowed him to afford a "convertible sports car." *Id.* at 48.

It is well-established that "statements between conspirators which provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy, further the ends of a conspiracy." *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991) (cleaned up). Maharaj's statements fit that description. As the district court noted, Maharaj made these statements "in order to encourage participation with the defendant in the alleged unlawful conduct." App'x at 44. The testimony thus helped the jury to understand the formation of the conspiracy, how Maharaj and Rubano came up with the scheme, why they trusted one another, and how Ekemen was induced to continue participating in the conspiracy. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (holding that evidence of a "pre-existing drug-trafficking relationship" between co-conspirators was admissible because it "furthered the jury's understanding of how the instant transaction came about and their role in it").

Second, the probative value of the testimony was not substantially outweighed by a danger of unfair prejudice. Ekemen testified that she had "asked [Maharaj] how long he has been doing this" with his co-conspirator because she "was curious how long he had been involved." App'x

4

45. She said that Maharaj had described a prior scheme which was so successful that it was the only way he was able to afford his car in college. *Id.* at 47. Maharaj's conduct in college was remote in time from the charged conspiracy and did not involve the Funds at issue in the charged offenses. It also did not "involve conduct any more sensational or disturbing than the crimes with which [Maharaj] was charged." *Lyle*, 919 F.3d at 737 (internal quotations marks omitted). The district court's decision to admit the evidence was not "arbitrary and irrational," and it was not an abuse of discretion. *Quinones*, 511 F.3d at 308 (internal quotation marks omitted).

## II.     Wharton's Rule

Maharaj argues that his conviction for conspiracy to commit honest services wire fraud violates Wharton's Rule. Maharaj concedes that he did not raise this argument in the district court, so we review for plain error. *See, e.g.*, *United States v. Miller*, 954 F.3d 551, 557 (2d Cir. 2020). To establish plain error, a defendant must demonstrate that: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (cleaned up).

"It has been long and consistently recognized by the [Supreme] Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses," and "[t]he power of Congress to separate the two and to affix to each a different penalty is well established." *Pinkerton v. United States*, 328 U.S. 640, 643 (1946). At the same time, the Supreme Court has recognized "Wharton's Rule, a doctrine of criminal law enunciating an

5

exception to [that] general principle." *Iannelli v. United States*, 420 U.S. 770, 771 (1975). Wharton's Rule—under certain conditions and "absent legislative intent to the contrary"— "supports a presumption that the [conspiracy and substantive offense] merge when the substantive offense is proved." *Id.* at 785-86.

"The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense." *Id.* at 782. Wharton's Rule originates from the common law principle that "where concert is a constituent part of the act to be done, as it is in fornication and adultery, a party acquitted of the major cannot be indicted of the minor." *Shannon v. Commonwealth*, 14 Pa. 226, 227-28 (1850). For such offenses, a "plurality of agents is logically necessary," so a separate offense of conspiracy, "which assumes the voluntary accession of a person to a crime of such a character that it is *aggravated* by a plurality of agents, cannot be maintained." 2 Francis Wharton, A Treatise on the Criminal Law of the United States § 2289, at 634 (7th ed. 1874) (emphasis added).

For Wharton's Rule to apply, (1) the offense must "require concerted criminal activity, a plurality of criminal agents"; (2) "[t]he parties to the agreement [must be] the only persons who participate in commission of the substantive offense"; (3) "the immediate consequences of the crime [must] rest on the parties themselves rather than on society at large"; and (4) "the agreement that attends the substantive offense [must] not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert," such that it "cannot . . . readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct." *Iannelli*, 420 U.S. at 782–84, 785.

6

There is no error here because Maharaj fails to establish any of these requirements. First, honest services wire fraud does not "require . . . a plurality of criminal agents." *Iannelli*, 420 U.S. at 785. In *United States v. Silver*, we held that a defendant was "incorrect in arguing that honest services fraud requires evidence of a meeting of the minds." 948 F.3d 538, 552 (2d Cir. 2020). In other words, an individual can engage in a scheme to deprive a victim of his right to honest services without engaging in a conspiracy. Second, Wharton's Rule does not apply here because Maharaj's scheme involved not only Rubano but also Ekemen. *See, e.g.*, *Iannelli*, 420 U.S. at 782 n.15 ("For example, while the two persons who commit adultery cannot normally be prosecuted both for that offense and for conspiracy to commit it, the third-party exception would permit the conspiracy charge where a 'matchmaker'—the third party—had conspired with the principals to encourage commission of the substantive offense."). Third, the "immediate consequences" of Maharaj's scheme rested not on him and his coconspirators, but on "society at large," as Maharaj and his coconspirators stole millions of dollars from the Funds and their members. *Id.* at 782-83.

Moreover, even if there were an error, it would not be one that is "obvious, rather than subject to reasonable dispute." *Marcus*, 560 U.S. at 262 (internal quotation marks omitted). "For an error to be plain, it must, at a minimum, be clear under current law, which means that we typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (cleaned up). Maharaj fails to identify any binding precedent holding that convictions for honest services wire fraud and conspiracy to commit honest services wire fraud violate Wharton's Rule. Nor is this "the 'rare case' where the error was 'so egregious

7

and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.'" *United States v. Esteras*, 102 F.4th 98, 108 (2d Cir. 2024) (quoting *United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004)). So he cannot satisfy his burden on plain-error review.

\* \* \*

We have considered the remainder of Maharaj's arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

8