*92 OPINION EN BANC
BOUDIN, Chief Judge.
After pleading guilty to wire fraud, in violation of 18 U.S.C. § 1341 (2000), Phillip Scott Scherrer was sentenced to 96 months’ imprisonment, 33 months above the top of the guideline sentencing range. He now appeals, arguing primarily that his sentence was unreasonably high. To provide general guidance on this type of recurring issue, we heard this case en banc in the first instance. Scherrer also contests two conditions on his supervised release term, a matter with which we deal at the end of this opinion.
Scherrer was indicted in September 2004 and, on December 2, 2004, pled guilty to a superseding information charging two counts of wire fraud. Count I addressed a fraud that Scherrer worked against two friends, George and Brenda LaPoint. In substance, he induced them to give him $150,000, promising to purchase an annuity that would generate specific income. Instead, Scherrer used the money for his personal benefit and then with further deceptions fended off requests from the La-Points for income.
Count II covered a wider scheme in which Scherrer induced or attempted to induce over 40 individuals or couples— some of them his friends — to “invest” over $3 million, primarily through sales of stock in a software company. The sales and attempted sales were facilitated by false statements concerning the value of the stock and other particulars. Scherrer did not buy the stock but used the money to maintain' a luxurious lifestyle, including membership in a country club, expensive cars, gambling, frequent vacations, and lavish entertaining.
Given a combined loss (achieved and attempted) of just over $3,216,000 and more than 10 victims, in conjunction with a criminal history category I, the guideline range for Scherrer was 51 to 63 months. U.S.S.G. § 2Bl.l(a), (b)(1) & (2); ch. 5, pt. A (Sentencing Table). At the start of the sentencing hearing on April 26, 2005, the district court warned Scherrer that the court was not disposed to stay within the guidelines and the court offered to let Scherrer withdraw his plea. Scherrer declined to do so.
Seherrer’s counsel then sought a sentence at the bottom of the range, pointing to Schemer's full acceptance of responsibility, his cooperation, his history of bipolar disorder, other medical problems and the harshness of his initial confinement. He argued also that Scherrer would not commit future frauds because his divorce deprived him of resources to do so. Scherrer himself promised to write a book about the events and devote the royalties to restitution.
George LaPoint testified, describing the fraud against him and his wife, Schemer’s exploitation of his trust, and the consequences.- Letters from other victims described Schemer’s abuse of their trust. Government counsel, recommending a 63-month sentence at the top of the range, emphasized the number of victims, the age and vulnerability of many of them, the extent of Schemer’s deceit, and the devastating economic harm inflicted on various victims.
The district judge then sentenced Scherrer to 8 years, 33 months more than the top of the 63-month guideline maximum. In brief (we will return to the details), the court stressed Schemer’s exploitation of personal relationships, the harm caused, his misuse of his skills, his extravagant use of the funds stolen, and his history of dishonest conduct. The court said that the sentence was needed to deter such conduct and protect the public, reflected the particular circumstances of *93 the crime, and was no greater than necessary to achieve the goals of the statute. 18 U.S.C. § 3553(a).
On this appeal, Scherrer’s main attack is that the sentence was unreasonably high, double counting factors already considered in the guideline calculation. Scherrer also says that the district court failed to give due weight to or adequately discuss mitigating factors such as Scherrer’s bipolar disorder or chronic medical conditions or the low likelihood of recidivism, that it disregarded shorter sentences imposed on other defrauders, and that it ignored the so-called parsimony principle of 18 U.S.C. § 3553(a).
United States v. Booker, 543 U.S. 220, 260, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), contemplates such appeals from allegedly unreasonable sentences and our recent decision in United States v. Jiménez-Beltre, 440 F.3d 514, 518-519 (1st Cir.2006) (en banc), outlines our approach to such cases. Unless the district court has misconstrued the statute or the guidelines or has misstated the facts, our main concern is whether the court has adequately explained its reasons for varying or declining to vary from the guidelines and whether the result is within reasonable limits. Jiménez-Beltre, 440 F.3d at 518-519.
We start with the reasons given by the district court for sentencing above the guideline range. Scherrer does not directly attack aggravating circumstances relied on by the court, focusing instead on supposed mitigating factors. But the reasonableness of the substantial increase over the guideline maximum can scarcely be judged without a better understanding of what lies behind the judge’s decision. This understanding is also pertinent to the charge of double counting made by Scherrer.
First, the present offenses were not Scherrer’s first involvement in fraudulent activities. In 1980, he was convicted for the fraudulent sale of sham hospital bonds in Michigan and was disbarred as a result. He also settled a civil case against him in North Carolina, which accused him of fraudulently obtaining a construction loan and using the funds for other purposes. In actions brought to enforce the settlement agreement, on which Scherrer had defaulted, he was twice held in contempt and briefly incarcerated for filing false or unsupported financial affidavits.
Nor does the fact that there were only two counts in the present case fully reflect Scherrer’s career of fraud. Although count II focused on the stock of a single company, effectively the count embraced a whole series of frauds against different persons. Although the loss calculation aggregates these frauds, it does not fully reflect the extent to which Scherrer — taking into account his earlier misbehavior — • had become a serial criminal specializing in fraud. It was happenstance that he used the same company stock for successive swindles.
The district court was especially disturbed by Scherrer’s exploitation of trust. Scherrer presented himself as a successful professional and a personally sympathetic figure (for example, he spoke at the memorial service for the LaPoints’ deceased son) and then exploited his personal connections with various of the victims to defraud them. The district court also stressed the age of some of the victims, their personal need, and the economic consequences inflicted by the frauds, contrasted with Scherrer’s purchase of luxuries for himself.
These assessments were not conjecture but were supported by individual stories revealed by the LaPoint testimony and letters written by victims describing what had happened and, in some cases, urging *94 the most severe possible sentence. Among the victims were a man who worked at a dry cleaning store, the locker room attendant at Scherrer’s golf club, former students of Scherrer and others who had little to spare. Among the funds taken were those saved by older people for retirement, money for children’s education and the proceeds of a divorce settlement. One particularly affecting letter read in part:
I am 78 years old and a widower.... I retired in 1987 with a pension.... Over the years it has been difficult to save with yearly inflation when my income remains the same. I was approached by Phillip Scherrer who claimed to be an agent for Delaware Corp., to invest in a stock called “Bloodhound” which he said would return 6 to 8 times my investment within a year. In a period of a few months, I gave him $10,000 which was about half my life savings. This doesn’t leave very much for emergency expenses and certainly at my age I do not have any potential earning power. I now exist on necessary expenses and hope for the best.
It was not unreasonable for the judge to regard Scherrer’s history and methods as pertinent to the “nature and characteristics of the offense and the history and characteristics of the defendant,” 18 U.S.C. § 3553(a)(1), nor to regard the aggravating circumstances as pertinent to the “seriousness of the offense,” “just punishment” and the need for “adequate deterrence,” id. § 3553(a)(2)(A), (B). The affirmative basis for the district court’s decision to vary upwards from the guidelines is adequately supported.
Scherrer’s counter-attack on the sentence begins with his claim that mitigating factors were ignored. Taken at face value, these factors do at first seem to have weight; but the government gave some effective answers in the district court and it is fair to infer that the district court found them persuasive. That the district court did not elaborate on them — it said only that it took them into account — does not preclude the inference where the record explains it. Jiménez-Beltre, 440 F.3d at 518.
Admittedly, Scherrer was diagnosed with bipolar disorder in 1978 and suffered a breakdown the next year requiring a hospital stay. However, lithium is often an effective treatment and it so proved for Scherrer, who earned both an M.B.A. and a Ph.D while taking medication, until (against medical advice) he ceased using it in 1998. The district court was entitled to discount the claim of medical condition where, as here, the condition was reactivated by Scherrer’s own refusal to continue on medication. Cf. U.S.S.G. § 5H1.4 (Policy Statement) (prohibiting consideration of drug dependence as a mitigating factor under the guidelines).
In a related argument, Scherrer says he currently suffers from various medical conditions that will be exacerbated by prison including high blood pressure, high cholesterol, hypothyroidism and Raynaud’s disease (a circulatory disorder). Yet it also appears that these conditions are controlled by medication and that the Bureau of Prisons can furnish the necessary medical care for the conditions.
In a second such objection, Scherrer says that the district court ignored his showing that in other cases other defrauders whose behavior was similar or worse had received more lenient sentences. Thus, according to Scherrer, the district judge was disregarding “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.” 18 U.S.C. § 3553(a)(6). Scherrer points to two kinds of evidence to support his thesis:
*95 • two cited cases in the same district court in which defendants were convicted of fraud but received 60-month sentences (United States v. Blastos, 258 F.3d 25 (1st Cir.2001), and United States v. Trainor, U.S.D.C., D.N.H., No. 04-CR-118-JD);
• newspaper reports of several recent federal fraud cases in other courts in which defendants got shorter sentences (e.g., a former WorldCom director sentenced to a year and a day).
Trying to compare an individual sentence with a few counsel-selected cases involving other defendants sentenced by other judges is almost always useless. The cases selected in this manner are not likely to be representative, may not be comparable (e.g., convictions after trial versus pleas), and the information readily available about the other defendants and their circumstances is usually going to be inadequate to assure comparability. Scherrer’s conduct, involving a loss of $3.2 million inflicted upon dozens of individual, unsophisticated victims, is not “similar” to that of Blastos, who defrauded the Greek government of $2.1 million, or of Trainor, who defrauded institutional lenders of less than $1 million.
Scherrer also accuses the district court of ignoring the “parsimony” principle, that is, the statutory guidance that a sentence should be no higher than needed to meet statutory goals. 18 U.S.C. § 3553(a). But the district court acknowledged the principle and, from the judge’s point of view, eight years was the minimum sentence needed to provide adequate deterrence through a just sentence for a specially reprehensible series of frauds. So, in this case, the issue remains whether the varianee and resulting sentence were reasonable.
It would be a different matter if the district court relied upon a factor not acknowledged by the statute to enhance a sentence — for example, if the court said the extra 33 months was necessary to appease angry victims. Assuming a guideline sentence that satisfied the goals set forth by the statute, adding more months for some other, unapproved purpose might well defy the parsimony principle. In this case the district judge relied upon nothing outside the ambit of the statute to increase the sentence.
In sum, the district judge had a reasonable basis for exceeding the guideline maximum. The only close call is whether the amount by which he exceeded the maximum is also reasonable: the guideline maximum was five and a quarter years; the sentence imposed was eight years. Numerically, the jump is not vast; as a percentage it is considerable. Deciding just how far a judge should vary from the range, where a basis for variance is made out, is quite hard to measure. In this case the sentence is not out of line with other upward variances in egregious cases.[1]
Scherrer was also sentenced to three years of supervised release and challenges two conditions of that release— requiring him to undergo treatment for narcotic addiction or drug or alcohol dependency and abstain from alcoholic beverages during and after such treatment— as an abuse of discretion. The government has conceded that the need for those conditions is not supported by the record and has requested a limited remand for purposes of striking those conditions.
*96 We agree that the need for those conditions is unsupported by the record. Compare United States v. Thurlow, 44 F.3d 46, 47 (1st Cir.1995) (per curiam) (upholding condition of abstaining from alcohol where record indicated that substance abuse was a serious problem for the defendant and that he used the proceeds of his crimes to purchase alcohol on several occasions). On remand, the district court can simply strike the conditions or develop a record on the matter.
The sentence is affirmed save for the two conditions just cited and the matter is remanded to the district court to strike the conditions or to hold further proceedings with respect to them as it sees fit.

It is so ordered.

. United States v. Smith, 440 F.3d 704 (5th Cir.2006); United States v. Porter, 439 F.3d 845 (8th Cir.2006); United States v. Jordan, 435 F.3d 693 (7th Cir.2006); United States v. Rogers, 423 F.3d 823 (8th Cir.2005).