TASHIMA, Circuit Judge,
dissenting:
We review a district court’s sentencing decisions for abuse of discretion, thus affording district courts a substantial degree of deference. But, as we recently observed en banc, “[t]he abuse of discretion standard is deferential, but it does not mean anything goes.” United States v. Ressam, 679 F.3d 1069, 1087 (9th Cir.2012) (en banc). And, as the Supreme Court has observed in a related context, we should “not indulge [in] post hoc rationalization” of the sentencing court’s “decisionmaking that contradicts the available evidence .... ” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 790, 178 L.Ed.2d *1107 624 (2011). In short, “[t]he abuse of discretion standard of review is not a rubber stamp of all sentencing decisions made by a district court, United States v. Ruff, 535 F.3d 999, 1005 (9th Cir.2008) (Gould, J., dissenting), and we should not turn a blind eye when a district court distorts the sentencing process. Because that is precisely what the majority does, I respectfully dissent.”
In affirming the sentence in the present case, the majority obfuscates a fact that is apparent from any fair reading of the record: the district court based its above-guidelines sentence on investor losses not caused by Christensen’s criminal conduct.
This was “significant procedural error.” United States v. Carty, 520 F.3d 984, 993 (9th Cir.2008) (en banc). The district court either mistakenly believed that the losses in question did result from Christensen’s criminal conduct, in which case the sentence was predicated on “clearly erroneous facts,” id. (internal quotation marks omitted), or it knowingly increased the sentence based on the impact of noncriminal conduct, a proposition that not even the government contends would be justified. Because victim impact formed the central basis for the upward variance, there is a “reasonable probability” that the district court’s error affected the outcome of the proceedings. United States v. Whitney, 673 F.3d 965, 972 (9th Cir.2012) (internal quotation marks omitted). For these reasons, I believe Christensen has demonstrated plain error entitling him to relief.
I.
As an initial matter, it is necessary to clarify the nature of the victims and their losses in this case. The presentence investigation report (“PSR”) identified fourteen victims of Christensen’s criminal conduct. The PSR explained the basis on which this determination was made:
The victims of this offense are the numerous individuals who invested money into the various projects the defendant managed and who had their investment funds diverted for other uses which they did not authorize. It is noted victim statements were received from other individuals who lost investment funds due to the failure of all of Christensen’s projects. As their funds were properly invested into the projects they designated and were not diverted, they are not victims for the purposes of this criminal matter.
Consistent with this approach, for each of the fourteen victims, the PSR separately listed the amount of money invested with Christensen, and the portion of that investment fraudulently diverted and lost as a result of the criminal conduct. Across the fourteen victims, the total amount of money lost due to Christensen’s fraud was $985,994, representing less than half of the more than $2.1 million invested by these individuals.
The district court accepted the PSR’s calculation of $985,994 as “the agreed upon sum in terms of loss in this case.” Indeed, this was the figure employed in calculating Christensen’s advisory guidelines sentencing range and was the amount of restitution that Christensen was eventually ordered to pay. As described below, however, the district court disregarded the PSR’s methodology in assessing the impact of Christensen’s conduct on individual victims, conflating losses suffered due to the fraud and losses suffered from legitimate (i.e., non-criminal), but failed investments.
II.
Although one would never know it from the majority opinion, the district court based its upward variance on the impact of Christensen’s conduct on individual inves *1108 tors, specifically five victims identified in the PSR and one investor who was not a victim at all. This is abundantly clear from the record.
At the outset of explaining the basis for its sentence, the district court stated that it had “researched a number of cases” in which sentencing courts had varied upward “under similar circumstances.” The district court then described in detail three out-of-circuit cases that it considered particularly analogous, all involving defendants convicted of financial fraud who received above-guidelines sentences on the basis of victim impact. The district court characterized the final case it discussed, United States v. Schlueter, 634 F.3d 965 (7th Cir.2011), as the “most instructive.”[1] According to the district court, the upward variance in Schlueter was imposed (and affirmed) because “the guideline range failed to adequately account for the harm that [the defendant’s] fraud had caused his victims or for the egregiousness of his conduct.” The victims in Schlueter were friends of the defendant, many of retirement age, and, in the district court’s words, the defendant “[took] advantage of personal relationships to cheat them out of significant sums that they needed at critical stages of their lives,” including “one victim [who] was unable to purchase a home because of the fraud.”
After recounting the details of Schlueter, the district court explained that it “went back to the victim impact statements and the presentence report to compare, in effect, Mr. Christensen to the defendant in Schlueter.” It was at this point that the district court described the alleged impact of Christensen’s conduct on six specific investors. The district court prefaced this discussion by stating that it was “looking at the victims’ losses [and] statements.”
For at least three of the six investors, however, the district court considered the impact of losses well beyond those caused by Christensen’s criminal conduct. For instance, the district court described Robert G. as a victim who “has been unable to retire ... as planned; he’s had to continue to work.” Yet, according to the PSR, Robert G. only lost $5,496 due to the fraud. It is unlikely that this narrow loss was the cause of Robert G.’s inability to retire, especially given that Christensen repaid all but $192 of that loss more than two years prior to the sentencing hearing.
The district court also discussed an investor named Mehr, who apparently lost $128,000 through investing in one of Christensen’s projects. The district court noted Mehr’s statement that “if he had known and been told the truth, he obviously would not have invested in the project.” But Mehr is not listed in the PSR as a victim. Rather, as the government concedes, he is one of the investors not included in the PSR because his funds were properly invested and not diverted.
Finally, and most importantly, is Jennifer R., whom the district court described as “the victim that concerns me the most.” Jennifer R. submitted a letter to the probation officer indicating that she lost $330,000 of her life savings from investing with Christensen, which led to the disintegration of her marriage. The PSR, however, lists Jennifer R. as having lost only $23,017 due to Christensen’s fraud.[2] Nev *1109 ertheless, in weighing the impact of Christensen’s conduct, the district court described Jennifer R.’s experience as follows:
She invested $330,000 of her life savings, her and her husband’s, which they had saved for 17 years. This was going to be their retirement. They were invited to Mr. Christensen’s home. He befriended them, he talked them into investing and, as a result, they lost the entire amount of their life savings. And her marriage, as she writes, could not handle the loss. So not only did she lose her entire life savings, her 19-year marriage has ended as a result of the defendant’s criminal behavior.
(Emphasis added.)
For all three of these investors (and likely two more of the remaining three),[3] it is evident that the district court based its analysis on losses unrelated to Christensen’s criminal conduct. These losses may have been caused by Christensen’s poor, but non-criminal, management, the victims’ poor judgment in investing with him, the deterioration of the economy, or some combination thereof. None of these are reasons why Christensen was convicted of a crime.
The district court’s consideration of these losses can be explained in only one of two ways: (1) it mistakenly believed that the full investment losses were attributable to the fraud; or (2) it realized that just a portion of the losses resulted from the fraud, but it nonetheless knowingly based its upward variance on the impact of non-criminal conduct. For reasons described below, the record supports the former interpretation, but under either scenario, the district court committed significant procedural error.
III.
If the district court operated under the erroneous belief that the full losses of Robert G., Mehr, and Jennifer R. were attributable to Christensen’s crimes, there can be little dispute that the sentence was predicated on “clearly erroneous facts.” Carty, 520 F.3d at 993 (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Indeed, the government has never contested the accuracy of the PSR’s loss calculations for these investors. The district court’s statements at sentencing make plain that it did proceed under this incorrect assumption.
As described, the district court immediately led into its discussion of the six investors by stating that it was “looking at the victims’ losses.” Then, with regard to Jennifer R., the most important victim in the district court’s calculus, the district court stated that she lost her entire life savings of $330,000, as well as her 19-year marriage, “as a result of the defendant’s criminal behavior.” (Emphasis added.) The district court could not have made a *1110 more direct statement indicating that it was treating and relying on full investment losses (including non-criminal losses) as attributable to Christensen’s criminal activities.
Nearly as compelling an indication is the district court’s reference to Mehr, who was not a victim at all. The district court’s discussion of the six investors, including Mehr, followed its long description of the purportedly analogous cases in which sentencing courts had varied upward on the basis of victim impact. In fact, the district court used the word “victim” ten times in the three pages of the sentencing transcript preceding its discussion of these investors. It is inconceivable that the district court deemed it relevant to discuss Mehr’s losses in this context while fully cognizant that Mehr was not a victim.
The majority offers no refutation of this evidence in holding that the district court did not premise its sentence on clearly erroneous facts. Instead, the majority attempts to elide the factual basis underlying the upward variance by pointing to two passing references that the district court made, later in the sentencing hearing, to the PSR’s aggregate loss calculation of $985,994. Maj. Op. at 1103. From these references, the majority reasons that the district court surely predicated its variance only on losses caused by the fraud. Id. at 1103-04. This analysis ignores the reality that the district court’s variance was based not on aggregate losses, but on the impact on individual victims. The district court emphasized as much over and over at sentencing. In evaluating those individual victims, the district court relied on clearly erroneous facts, and it thereby committed significant procedural error.
IV.
If, on the other hand, the district court appreciated that the referenced investor losses were not attributable to Christensen’s crimes, this would necessarily mean that the district court intentionally rested its sentence, in part, on the impact of noncriminal conduct. Otherwise, the district court’s extended discussion of the full investor losses would have been without purpose. At oral argument, however, the government expressly disclaimed reliance on any notion that the district court could permissibly base its upward variance on non-criminal conduct. Hence, if the majority is correct that the district court did not rely on erroneous facts in misperceiving the nature of the losses, the only remaining possibility depends on an argument that the government wisely has elected not to pursue, and that we should not advance in its stead. See United States v. Anekwu, 695 F.3d 967, 985 (9th Cir.2012) (arguments not raised by parties are waived).
Yet, because the majority has not clearly disavowed the possibility that the district court may have varied upward based on the impact of non-criminal conduct, reluctantly, I find it necessary to address that question. I believe it must be answered in the negative. In the analogous context of “relevant conduct” under U.S.S.G. § IB 1.3, used in calculating a defendant’s guidelines offense level, the Courts of Appeals are unanimous in holding that the provision is limited to conduct that is criminal. See United States v. Catchings, 708 F.3d 710, 712, 720 (6th Cir.2013); United States v. Griffith, 584 F.3d 1004, 1013 (10th Cir.2009); United States v. Schaefer, 291 F.3d 932, 940-41 (7th Cir.2002); United States v. Dove, 247 F.3d 152, 155 (4th Cir.2001); United States v. Jain, 93 F.3d 436, 443 (8th Cir.1996); United States v. Peterson, 101 F.3d 375, 385 (5th Cir.1996); United States v. Dickler, 64 F.3d 818, 830-31 (3d Cir.1995). The reasoning behind this limitation applies equally here, i.e., to the basis for a variance. To allow for an upward variance based on non-criminal conduct “would allow individuals to be pun *1111 ished by having their [sentence] increased for activity which is not prohibited by law but merely morally distasteful or viewed as simply wrong by the sentencing court.” Peterson, 101 F.3d at 385.
The sentencing factors of 18 U.S.C. § 3553(a)(2) confirm this conclusion. With the exception of the rehabilitative goals of clause (D), all of the factors focus on the unlawful nature of the defendant’s past or future behavior. The factors speak of the seriousness of “the offense,” the need to provide just punishment for “the offense,” the need to deter “criminal conduct,” and the need to protect the public from “further crimes.” See 18 U.S.C. § 3553(a)(2). The impact of a defendant’s completed, non-criminal activities — -in this case, losses caused by poor investment decisions — is not relevant to any of these inquiries. And given that sentencing courts must impose a sentence that is “sufficient, but not greater than necessary to comply with the purposes” of the § 3553(a)(2) factors, there is no place for increasing a defendant’s sentence on the basis of this consideration. Id. § 3553(a) (emphasis added).
The majority’s response on this point is perplexing. The majority seems to concede that it would have been improper for the district court to vary upward based on the magnitude of the losses caused by Christensen’s non-criminal conduct. In other words, the majority seems to concede that the district court would have erred in stating, “I am varying upward because Christensen caused over $2.1 million in investor losses, including over $1.1 million in losses not related to the fraud.” But the majority nonetheless contends that it was appropriate to vary upward based on the “life-destroying impacts” of those same losses. Maj. Op. 1104-05. This is a classic distinction without a difference.[4]
In its limited explanation, the majority vaguely references 18 U.S.C. § 3661, which allows sentencing courts to receive any information concerning a defendant’s “background, character, and conduct.” Maj. Op. 1104. However, this provision, which “remov[es] typical ‘jury trial’ evidentiary limitations” on the information that may be presented and considered at sentencing, United States v. Booker, 543 U.S. 220, 249, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), says nothing of the grounds upon which a district court may grant an upward variance. To the extent the majority implies that all information countenanced under § 3661 may serve as the basis for a variance, such is patently absurd. For then, a sentencing court could vary upward based on a defendant’s eating or dressing habits, the tradition or school of yoga he favors, or the regularity with which he recycles, all of which “provide greater insight into [the defendant’s] ‘background, character, and conduct.’ ”[5] Maj. Op. 1104-05.
*1112 For these reasons, I would hold that it is significant procedural error to rest an upward variance on the impact of a defendant’s lawful activities and conduct.
y.
Christensen must also establish prejudice, and to do so, he must demonstrate that there is a “reasonable probability” that the district court’s error affected the outcome of the sentencing. Whitney, 673 F.3d at 972 (quoting United States v. Marcus, 560 U.S. 258, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012 (2010)). Ordinarily, this would be a difficult task given the inherent challenges in identifying “the effect of any discrete set of errors on a district court’s multifaceted sentencing determination.” Id. Here, however, Christensen is presented with no such difficulties given that the district court made clear that the issue on which it committed error provided the central basis for its upward variance.
In seeking to minimize the import of this error, the majority paints a grossly distorted picture of the district court’s decisionmaking process. Rather than informing the reader of the district court’s unambiguous emphasis on victim impact, the majority relays every snippet of the sentencing hearing it can locate that would suggest other considerations played a role in the sentencing decision. See Maj. Op. 1099-1100,1103.
The majority alternatively holds that, even if the district court did err in overstating the impact of Christensen’s criminal conduct, Christensen cannot demonstrate prejudice because it is “uncertain” whether the outcome would have been different if not for the error. Maj. Op. 1105-06. The majority’s analysis in this regard places an incorrect, and virtually impossible to meet, burden on a defendant under plain error review. To demonstrate prejudice, Christensen need not show with absolute certainty that he would have received a lesser sentence in the absence of the error, he need only show a “reasonable probability” of such. See Whitney, 673 F.3d at 972; see also United States v. Gonzalez-Aguilar, 718 F.3d 1185, 1189 (9th Cir.2013). Given the overriding role that victim impact played at sentencing, I have little difficulty finding a reasonable probability that the district court would not have varied to the degree that it did— nineteen months above the high end of the guidelines range and almost double the low end of the guidelines range — had it not erred.
Indeed, to not find a reasonable probability of prejudice when a district court’s error undermines the primary justification for its sentence makes a mockery of the requirement that the sentencing court adequately explain its decision, a requirement that is of particular importance in the context of a variance. See Gall, 552 U.S. at 46, 128 S.Ct. 586. It is true that, in the present case, the district court evidenced a desire to reach its eventual outcome regardless of the reasons. Prior to the second sentencing hearing, the district court indicated to the parties that it was considering varying on the basis of Christensen’s personal use of the funds diverted. It was only after Christensen submitted briefing as to why it would be inappropriate to vary on this basis that the district court suddenly shifted gears and changed its justification at the second hearing, without advance notice, to victim impact. However, it would be perverse to find a lack of *1113 prejudice because we suspect that a district court was bent on reaching a particular outcome. The integrity of the sentencing process requires that we take a district court at its word as to the reasons for the sentence imposed. See id. at 50, 128 S.Ct. 586 (“[A district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.”). Here, those reasons were fundamentally flawed.
VI.
The district court committed “significant procedural error” in imposing an upward variance on the basis of investor losses that were not attributable to Christensen’s criminal conduct. This was prejudicial error, and Christensen is entitled to resentencing. Accordingly, I would vacate the sentence and remand for resentencing. I respectfully dissent.

. The other two cases were United States v. Siman, 419 Fed.Appx. 979 (11th Cir.2011), and United States v. Scherrer, 444 F.3d 91 (1st Cir.2006). The district court characterized Siman as a case where the sentencing court varied upward "relying on the impact experienced by the victims and who the victims were." Similarly, the district court described Scherrer as a case where the sentencing court "focus[ed] on the victims” in imposing a variance.

. The PSR lists Jennifer R. as having invested a total $90,000 with Christensen. It is not *1109 entirely clear why there is a discrepancy between this amount and the $330,000 described in her letter to the probation officer, although it may be that the additional funds were invested in projects from which Christensen did not fraudulently divert any funds (and therefore were not included the PSR’s calculations). In any event, the relevant comparison is the $23,017 loss established by the PSR and the $330,000 figure on which the district court expressly relied.

. For two of the other three victims discussed, William K. and James D., there was also a sizeable gap between the amount invested and the amount lost due to the fraud (an over $90,000 difference for William K. and a $51,000 difference for James D.). The district court did not mention specific dollar amounts lost by these two investors, but its discussion again suggested that it was considering total investment loss, not loss caused by the fraud. For only one of the six investors, Twila K., was the amount invested the same as the amount lost as a result of the criminal ^conduct.

. The majority charges that
the dissent assumes Jennifer R.’s divorce was a matter of simple arithmetic: it resulted from the loss of a certain sum of money, and that sum must have been greater than $23,017; therefore, because Jennifer R. lost only $23,017, the district court was required to ignore her claim that Christensen's conduct had caused her divorce.
Maj. Op. 1105. But I make no such assumption; instead, I take the district court at its word. It stated: "So not only did she [Jennifer R.] lose her entire life savings, her 19-year marriage has ended as a result of the defendant’s criminal behavior." (Emphasis added.) Even more disturbing than the majority's refusal to confront the facts is its assertion that because "many of the 'life destroying impacts' were indivisible," id., we need not and should not even attempt to parse out what harm was caused by a defendant’s criminal conduct.

. Our decision in United States v. Mercado, 474 F.3d 654 (9th Cir.2007), provides an example of when information received under § 3661 can be pertinent to a defendant's criminal activities. There, we cited § 3661 in holding that sentencing courts may consider *1112 criminal conduct charged in the indictment, but of which the defendant was acquitted, in calculating the defendant's guidelines range. See id. at 656-57. This scenario centers on the conduct at issue being cnminal, requiring that the sentencing court find by a preponderance of the evidence that the defendant is culpable for the charged, but acquitted conduct. See id. at 655-56.